AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EM-
PLOYEES, AFL-CIO, Plaintiff-Appellant, v. THE STATE OF ILLINOIS *et
al.*, Defendants-Appellees.

First District (5th Division)   No. 86—997

Opinion filed July 10, 1987.

586

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Donald D. Schwartz, Special Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by plaintiff, the American Federation of State, County and Municipal Employees, AFL-CIO, from an order of the circuit court of Cook County granting summary judgment to defendants and vacating an arbitrator's award in the underlying labor dispute action. Defendants are the State of Illinois, Department of Mental Health and Michael A. Belletire, its director, and Department of Central Management and its director, Michael E. Tristano. For the reasons set forth below, we reverse.

The labor dispute in the instant matter arose as a result of the unauthorized absence of two technicians (the labor dispute grievants) who were employed by the Department of Mental Health at its Howe Developmental Center to provide day-to-day care and supervision of the developmentally disabled residents. The residents have an average I.Q. of 10 and function at the mental age of a one- or two-year-old child. It is undisputed that on April 28, 1985, the facility was "short staffed." Nonetheless, the grievants, shortly after serving breakfast to the residents, left the facility with a third employee to buy food for a barbecue to be held for the residents that afternoon. They went to a grocery store and shopped for approximately one-half hour, then proceeded to a flea market where they remained for one hour and 15 minutes; their grocery store stop was authorized, but their attendance at the flea market was not. During their absence, a male resident of the facility died after being left unattended and tied to a toilet in a wing of the unit other than the one to which the grievants were assigned. Based on these events, the grievants were discharged for mistreatment of service recipients pursuant to the rules and regulations of the Department of Mental Health and the policy of the Howe Developmental Center.

Plaintiff union filed a grievance on behalf of the two technicians challenging their discharges pursuant to a collective bargaining agreement in effect between plaintiff and defendants. Plaintiff alleged that the discharges were not for just cause, as required by the contract, and requested that the grievants be reinstated "and made

whole for all wages and benefits lost." At a subsequent arbitration hearing, the arbitrator found that the defendants had proved their charges, but that the grievants were not directly responsible for the resident's death and, relying on several mitigating factors, reduced the grievants' discharges to four-month suspensions (the amount of time since their discharge) without pay or benefits and ordered that they be reinstated at the beginning of the next work week following entry of the award.

Thereafter, defendants refused to reinstate grievants and plaintiff union filed an action in the circuit court to enforce the award pursuant to the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1608, 1616) and section 11 of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 111), defendants sought to vacate the award based on public policy considerations, and the parties filed cross-motions for summary judgment. The trial court, adopting defendants' view, held that the arbitrator's award was a departure from the public policy of Illinois (*i.e.*, to protect, not to endanger, mental health patients left in the State's custody) and that the arbitrator exceeded his authority in reducing the discipline for the grievants' misconduct from discharge to suspension and reinstatement.

On appeal, plaintiff contends that the arbitration award was not reviewable on the merits and that the arbitrator's remedy of reinstatement does not offend public policy, whereas defendants argue to the contrary and further contend that the arbitrator exceeded his authority by considering mitigating factors on behalf of the grievants and, as a result thereof, in ordering their reinstatement.

In construing an arbitration award a court must, whenever possible, seek to uphold its validity. (*Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199.) Where a collective bargaining agreement provides that an arbitrator is to decide disputes involving the application and interpretation of the provisions of an agreement, such provision is the source and limit of the arbitrator's power. The scope of an arbitrator's power also generally depends upon what the parties agree to submit to him; an arbitrator exceeds his power when he decides any matters not submitted for his resolution. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 386 N.E.2d 47.) An arbitrator's award entered pursuant to a collective bargaining agreement between parties is not subject to review on the merits except for fraud, partiality, or some other misconduct. (See *White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 77 N.E. 327; *Sweet v.*

*Steve's Cartage Co.* (1977), 51 Ill. App. 3d 913, 365 N.E.2d 1110; *Cohen v. Meyers* (1969), 115 Ill. App. 2d 286, 253 N.E.2d 144; Ill. Rev. Stat. 1985, ch. 10. par. 112(e).) However, a court may "inquire into the merits of the arbitrator's interpretation in an effort to determine *** if the arbitrator's award drew its essence from the agreement so as to prevent a manifest disregard of the agreement between the parties" (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 421, 386 N.E.2d 47), notwithstanding our supreme court's recognition of the overriding interest in the finality which inheres in the submission of disputes to arbitration and its counseling against judicial review of the merits of arbitration awards (*White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 77 N.E. 327).

We first observe that here, under the parties' collective bargaining agreement, disciplinary action may be imposed on an employee *only for just cause.* Disciplinary action or measures include an oral or written reprimand, suspension, or discharge. The arbitrator may neither amend, modify, nullify, ignore, add or subtract from the provisions of the agreement. The stipulated issue submitted by the parties for determination by the arbitrator was: Were the grievants discharged for cause? If not, what is the remedy?

The arbitrator subsequently found that defendants had proved their charges against the grievants, *i.e.*, (1) that they were guilty of leaving their worksite while in pay status and while the facility was "short staffed," (2) they failed to notify their supervisor or receive permission to visit the flea market, and (3) they were guilty of mistreatment of service recipients as a result of their unauthorized absence. The arbitrator held, however, that the first two charges, standing alone, did not constitute just cause for discharge and the third charge, although serious, also did not constitute cause for discharge in light of certain mitigating factors which he deemed appropriate to take into consideration in order to determine whether cause for discharge existed. Specifically, the arbitrator took the following circumstances into consideration: (1) agreement by the parties that both grievants had been exemplary employees—one employed for approximately eight years and the other for over 1½ years; (2) the grievants had treated residents of the facility as though they were "family"; (3) the grievants admitted their wrongdoing and expressed remorse; and (4) at the arbitration hearing, the grievants were straightforward and truthful about their wrongdoing. Based on the foregoing, the arbitrator concluded that the grievants would be able to return to the useful employ of their employer and provide appro-

priate services to the residents without the likelihood of a repetition of the occurrences of April 28, 1985.

In light of the above, we do not find that the arbitrator exceeded the scope of his power in formulating his award. The parties, pursuant to their agreement, authorized the arbitrator to determine if just cause existed for the grievants' discharges and, if not, requested an appropriate remedy. The parties therefore empowered the arbitrator to interpret what conduct constituted just cause for discharge, as mandated in the parties' agreement, and the penalty to be imposed absent a just cause determination. Clearly, therefore, the arbitrator did not resolve any issue not submitted to him. Similarly, we find that the arbitrator's remedy—suspension and reinstatement—was within the scope of his power. The agreement between the parties includes four kinds of disciplinary measures—an oral or written reprimand, suspension, or discharge. The arbitrator, in finding no just cause for discharge existed, deemed the appropriate remedy was suspension for a period of time without pay or benefits followed by reinstatement. The arbitrator's award therefore draws its essence from the parties' agreement and is not a manifest disregard of that agreement.

We also reject defendants' argument that the arbitrator imposed his own brand of industrial justice by reducing the grievants' discipline because a finding of mistreatment by the grievants mandated that the discipline to be imposed was discharge. Defendants appear to equate mistreatment as synonymous with a "just cause" reason for discharge, notwithstanding the degree of mistreatment, based upon Rule 104.20 of the Department of Mental Health and its incorporation into the policy of the Howe Developmental Center which states that any employee found guilty of mistreatment of service recipients "will be subject to discharge." However, contrary to defendants' argument, we do not find, and apparently neither did the arbitrator, that the operative words of "will be *subject to* discharge" are the equivalent of defendants' interpretation of the same words, i.e., "*will/shall be* discharged" which the Department could have but apparently elected not to so promulgate.

We further observe that subparagraph (d) of Rule 104.20 states that all Department personnel shall be instructed concerning the *penalties* involved when found guilty of abuse of service recipients, which suggests that discharge is not the only penalty which might be imposed. Similarly, the pertinent provisions of the collective bargaining agreement between the parties that were recited in the arbitrator's written award listed four types of disciplinary measures

that could be imposed only upon a finding of just cause. Just cause was not defined in the agreement as any particular degree of mistreatment; in fact, it was not defined at all, thereby indicating it was open to interpretation and, as here, that interpretation was to be made by an arbitrator. In making that determination, it necessarily follows that the arbitrator take into consideration all factors, including mitigating ones in favor of a grievant. (See *Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201; *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) Finally, we note that although whether cause for discharge exists should be determined by an administrative agency and its decision as to cause will not be reversed unless arbitrary, unreasonable or unrelated to the employee's service (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885), we believe, as the arbitrator apparently did, that the defendants' determination that the grievants' conduct warranted discharge was unreasonably severe and unrelated to the grievants' future conduct in light of the underlying mitigating factors (see *Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201; *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511).

■ Having determined that the arbitrator's award drew its essence from the parties' agreement, that it was not a manifest disregard thereof, and that the arbitrator did not exceed the scope of his power, we next address defendants' public policy argument. It is well settled that even where an arbitrator's award draws its essence from a collective bargaining agreement, it may not stand "if it results in the contravention of paramount considerations of public policy." *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 423-24, 386 N.E.2d 47.

■ Here, plaintiff argues that before a judicial body can upset an arbitrator's award based upon considerations of public policy, the public policy must be "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " (See *W. R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America* (1983), 461 U.S. 757, 766, 76 L. Ed. 2d 298, 307, 103 S. Ct. 2177, 2183, quoting *Muschany v. United States* (1945), 324 U.S. 49, 66, 89 L. Ed. 744, 756, 65 S. Ct. 442, 451.) Defendants agree with this test, but interpret its application differently from that of plaintiffs. We find it un-

necessary to discuss the parties' various interpretations based upon the law of other States in light of the fact that our supreme court has held that " '[t]here is no precise definition of public policy, and consequently no absolute rule by which a contract can be measured or tested to determine whether or not it is contrary to public policy. Each case, as it arises, must be judged and determined according to its own peculiar circumstances.' (*Ziegler v. Illinois Trust & Savings Bank* (1910), 245 Ill. 180, 193, quoted with approval in *First Trust & Savings Bank v. Powers* (1946), 393 Ill. 97, 102, and in *Groome v. Freyn Engineering Co.* (1940), 374 Ill. 113, 124.)" *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 425, 386 N.E.2d 47.

We further observe that Illinois, in applying this case-by-case determination of public policy, appears to have adopted a strict test. (*J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889.) For example, our supreme court has held that the public policy of the State is to be found in its constitution and statutes and, when they are silent, then in its judicial decisions and constant practice of its governmental officials. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520 478 N.E.2d 1354, citing *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.) At the same time, the court has cautioned that the public policy of the State is not to be left to the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public. (*Groome v. Freyn Engineering Co.* (1940), 374 Ill. 113, 28 N.E.2d 274.) We further note that whether an arbitrator's award is repugnant to public policy is generally dependent upon the particular misconduct, *i.e.*, a cause for discharge must be based on "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and *sound public policy* recognize as good cause for his no longer holding the position.' " (Emphasis added.) (*Department of Driver Services v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 754, 477 N.E.2d 1372, quoting *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 551, 426 N.E.2d 885.) An unauthorized absence from work has been held both as a sufficient basis for suspension or discharge based upon public policy interests. See *Strobeck v. Illinois Civil Service Com.* (1979), 70 Ill. App. 3d 772, 388 N.E.2d 912 (a number of striking workers were suspended and reinstated, whereas one employee was discharged for similar conduct).

Here, in vacating the arbitrator's award, the trial court was of the opinion that the grievants' deviations from known rules of conduct violated Illinois public policy relating to the protection of mental health patients. On appeal, defendants argue that the arbitrator's reduction of the grievants' discipline from discharge to suspension and reinstatement violates the following public policies: (1) prevention of mistreatment of mentally ill and mentally retarded service recipients in State-run facilities; (2) the negative effect of grievants' reinstatement on employee discipline, morale, and the employer's operation should employees who commit serious resident neglect be reinstated; and (3) maintenance of the public trust in government care of the mental health recipients. With respect to defendants' first contention, that State law makes mistreatment of mental health recipients a criminal act and a serious breach of the public's trust, they rely upon the Department of Mental Health's Rule 104.20, which states that mistreatment will not be condoned and an employee guilty of mistreatment will be subject to discharge. Defendants also cite to section 12—19 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—19), contending that "gross neglect" of service recipients, a Class 4 felony, is similar (and presumably equivalent) to mistreatment as defined by the Department of Mental Health.

We first observe, as previously discussed above, that we do not believe that all degrees of conduct falling under the "mistreatment" appellation, which may range from negligent acts or omissions such as returning 15 minutes late from lunch (a common practice) to intentional or reckless abuse or mistreatment, were intended to equally require discharge as a disciplinary measure and to be considered, correspondingly, against public policy. Moreover, it appears that minor infractions of the Department of Mental Health's rules may incur only an oral or written reprimand. More serious infractions, such as being absent from a worksite without permission, as is the case here, may incur suspension. We further observe, contrary to defendants' argument, that in light of the imposition of discipline there is no condonation of violative conduct. Accordingly, we believe it would be overly broad to accept defendants' apparent construction that all forms of mistreatment of mental health service recipients require the discharge of the offending employees because such conduct contravenes public policy, especially in light of the fact that the parties' agreement does not indicate that any such construction was intended.

With regard to defendants' argument that mistreatment is the equivalent of the "gross neglect" element of section 12—19 of

the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12–19), they have not properly argued this contention and have cited no authority in support thereof; defendants merely make a bare assertion. A theory not advanced with citation to authorities is deemed waived. (*Flynn V. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.) Accordingly, we do not address this contention.

■■■ We also reject defendants' argument that the arbitrator's award will have a negative impact on other employees and affect the public trust in government care of mental health recipients. The discipline imposed on the grievants negates any condonation of their conduct and we are not persuaded that the penalties imposed upon these otherwise exemplary employees will not serve as a clear warning to their co-workers not to commit similar acts. (See *Local 453, International Union of Electrical Radio & Machine Workers, AFL-CIO v. Otis Elevator Co.* (2d Cir. 1963), 314 F.2d 25, *cert. denied* (1963), 373 U.S. 949, 10 L. Ed. 2d 705, 83 S. Ct. 1680.) Similarly, although it is true that the grievants have brought discredit upon the Department of Mental Health and its Howe facility, we do not believe that such discredit, standing alone, requires their discharge or contravenes public policy in light of the penalties imposed upon them. Accordingly, we hold that the arbitrator's reduction of the grievants' discipline from discharge to suspension and reinstatement does not contravene any public policy of this State created by constitutional or statutory law or pursuant to specific Illinois case law.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded with directions to the trial court to order enforcement of the arbitrator's award.

Reversed and remanded with directions.

SULLIVAN, P.J., and PINCHAM, J., concur.