THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES *et al.*, Plaintiffs-Appellees, v. AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), AFL-CIO, Defendant-Appellant.

First District (5th Division)   No. 1—89—1299

Opinion filed November 27, 1991.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield (William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

This is an appeal by defendant, American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO, from an order of the circuit court of Cook County granting plaintiffs' motion to vacate an arbitration award on public policy grounds. Defendant also appeals from an order declining to hear a motion for rehearing.

Cornelius Burress was a parole officer employed by the Department of Corrections. He was discharged on April 16, 1986, on the ground that he had pled guilty in Federal court to two counts of knowingly making false statements to the Department of Housing and Urban Development (HUD), a felony. Specifically, he understated his income in an application for rental assistance payments. The basis for the discharge was that his criminal conduct brought discredit to the Department of Corrections and constituted a violation of departmental rules.

After his discharge, the defendant, on behalf of Burress, filed a grievance and requested arbitration under the collective bargaining

agreement between the State and AFSCME, alleging that his discharge was not for "just cause" as required under the agreement. The arbitrator was asked to decide whether there was "just cause for the suspension and discharge of the grievant[.] If not, what is the appropriate remedy?"

Although the arbitrator found there was a linkage between Burress' wrongful conduct and his responsibilities on the job, the arbitrator went on to consider "whether the grievant's conduct was so inherently wrong as to disqualify the grievant from his job." In determining that discharge was not warranted, the arbitrator considered the fact that other parole officers in the continued employ of the Department of Corrections have been convicted of felonies. He also relied heavily upon a letter from Federal Judge Prentice Marshall, the judge before whom Burress pled guilty, in which Judge Marshall recommended that Burress' employment be continued.

> "I write to urge you to consider, if possible, retaining Mr. Burress in his present position. I am convinced that he truly regrets his misconduct. I placed him on probation with the special condition that he make restitution of the rent subsidies and perform a substantial number of hours of community service. * * *

> It is conceivable that this experience will make Mr. Burress a 'better' parole officer. From my vantage point, it is worth a try.

> * * * The primary purpose of my letter is to tell you that I would have no objections (and indeed would support) the retention of Mr. Burress in his present position."

The final mitigating factor considered was Burress' otherwise almost unblemished work record. As a result, the arbitrator ordered Burress reinstated to his former position without back pay.

Plaintiffs filed an application in the circuit court to vacate the arbitration award, on the grounds that the arbitrator exceeded his authority and that the award was contrary to public policy. Defendant filed a motion to dismiss, alleging that the court lacked subject matter jurisdiction. On June 8, 1987, the circuit court entered its final order, finding that it had jurisdiction to review the arbitration award on public policy grounds, and vacating the award as violative of public policy. Defendant's subsequent motion for rehearing was denied as not being timely moved to hearing, and this appeal followed. For the reasons set forth below, we reverse.

OPINION

Defendant raises two issues in its appeal. The first is whether the circuit court was the proper forum for this public policy challenge to an arbitration award, and the second issue is whether the subject arbitration award was properly vacated as violative of public policy.

Defendant urges that the Illinois State Labor Relations Board (ISLRB) has "exclusive primary jurisdiction" over public policy challenges to arbitration awards issued under collective bargaining agreements subject to the Illinois Public Labor Relations Act (IPLRA) (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*). It is clear, however, that the IPLRA itself does not provide for exclusive jurisdiction in the ISLRB over arbitration awards, and the decisions of the Illinois Supreme Court and this and other appellate courts have held that the circuit court has jurisdiction over public policy challenges to such awards.

Section 8 of the IPLRA provides that "[t]he grievance and arbitration provisions of any collective bargaining agreement shall be subject to the Illinois 'Uniform Arbitration Act'." (Ill. Rev. Stat. 1989, ch. 48, par. 1608.) Under sections 2, 12, 14 and 16 of the Uniform Arbitration Act (UAA) (Ill. Rev. Stat. 1989, ch. 10, pars. 102, 112, 114, 116), "all proceedings to compel arbitration, to stay arbitration, to seek vacation of an award, or to enforce an award are through the circuit court." (*Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, 222, 526 N.E.2d 149.) Section 12(e) of the UAA provides "Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act." (Ill. Rev. Stat. 1989, ch. 10, par. 112(e).) Defendant contends that circuit court review is limited to cases in which vacation is sought on the grounds of fraud, partiality or misconduct of the arbitrator. When an award is challenged on public policy grounds, defendant urges, jurisdiction lies with the ISLRB, and circuit courts should refrain from considering such cases and defer to the expertise of the labor board for resolution.

In support of its position, defendant cites several cases decided under the Illinois Educational Labor Relations Act (IELRA) (Ill. Rev. Stat. 1989, ch. 48, par. 1701 *et seq.*). (*Board of Education of*

*Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 538 N.E.2d 524; *Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, 526 N.E.2d 149.) In those cases it was held that the IELRA divested the circuit courts of jurisdiction to vacate or enforce labor arbitration awards subject to the IELRA. Defendant urges that the IELRA and the IPLRA evidence a common legislative intent to lodge in the labor boards the exclusive responsibility for effectuating labor policy by enforcing the provisions of the two acts.

■ This argument, however, overlooks a significant difference between the two labor acts. Section 8 of the IPLRA (Ill. Rev. Stat. 1989, ch. 48, par. 1608) explicitly provides for enforcement of arbitration awards in accordance with the Uniform Arbitration Act, while the IELRA makes no reference to the UAA. This distinction was noted in *Compton*, where the court, in reaching the conclusion that arbitration awards under the IELRA are not subject to circuit court review, said "[t]he absence of any reference to the Uniform Arbitration Act in the Illinois Educational Labor Relations Act strongly suggests that the legislature did not intend review of arbitration awards by the circuit court, even as to 'arbitrability.' " *Compton*, 123 Ill. 2d at 222.

Defendant points to the many areas of similarity between the IPLRA and the IELRA in support of its argument that *Compton* and *Warren Township* should control our decision here. Specifically, both acts bypass the circuit court for review of unfair labor practice decisions made by the respective boards, in the interest of uniformity of labor policy. Both acts also stress the strong public policy favoring arbitration and the finality of arbitration awards. Further, both acts define mandatory, permissive, and illegal subjects of bargaining. They also both include a provision giving each act preference over other laws. The acts show a common purpose of regulating labor disputes under collective bargaining agreements. Based on these similarities, defendant urges, we should follow *Compton* and *Warren Township*, decided under the IELRA, and find that under the IPLRA, the ISLRB has jurisdiction over this matter.

These same arguments were raised in *Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME)* (1990), 197 Ill. App. 3d 503, 554 N.E.2d 759. The court there found these similarities insufficient to overcome the express difference in the two acts: the IPLRA ex-

pressly providing for judicial review of arbitration awards and the IELRA being silent on the subject.

We also find significant another difference between the two labor acts which we believe supports our position that it is the circuit court rather than the ISLRB which has jurisdiction over vacation of arbitration awards. Under the IELRA, refusal to comply with an arbitration award is an unfair labor practice (Ill. Rev. Stat. 1989, ch. 48, pars. 1714 (a)(8), (b)(6)), while such refusal is not explicitly made an unfair labor practice under the IPLRA. (See Ill. Rev. Stat. 1989, ch. 48, par. 1610.) Under both acts, charges of unfair labor practices are dealt with by the boards. (Ill. Rev. Stat. 1989, ch. 48, pars. 1611, 1715.) The omission of refusal to comply with an arbitration award as an unfair labor practice under the IPLRA, and the inclusion under the IELRA, provides further evidence of a legislative intent that review of arbitration awards is to be handled differently under the two acts. Compare *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 531, 491 N.E.2d 1259 (where the court found that the inclusion of refusal to comply with an arbitration award as an unfair labor practice under the IELRA, and omission under the IPLRA, indicated a legislative intent "to establish a new regulatory scheme to administer arbitration awards in the unique area of public education").

In *Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME)* (1990), 197 Ill. App. 3d 503, 554 N.E.2d 759, AFSCME maintained, as it does here, that the ISLRB has exclusive jurisdiction over challenges to arbitration awards on public policy grounds, under agreements subject to the IPLRA. There the court noted that in *American Federation of State, County & Municipal Employees v. State* (1988), 124 Ill. 2d 246, 529 N.E.2d 534 (hereinafter *Blasingame*), the Illinois Supreme Court discussed in detail the question of whether the award was in fact violative of public policy, but said nothing about jurisdiction of the circuit court. "While the court did not say who should initially pass on the question of whether the award violated public policy, we think the court would have so stated, had it deemed the circuit court was not the proper tribunal to pass upon the matter initially." (*Department of Central Management Services*, 197 Ill. App. 3d at 508.) Similarly, in *American Federation of State, County & Municipal Employees (AFSCME) v. State* (1989), 192 Ill. App. 3d 108, 548 N.E.2d 592, this court noted the implicit teaching of *Blasingame* that "Illinois courts have the

power, albeit limited power, to vacate public labor arbitration awards on the basis of public policy." 192 Ill. App. 3d at 115.

Regarding defendant's contention that the ISLRB has primary jurisdiction over public policy challenges to arbitration awards and the courts should defer to the board in such cases, the ISLRB itself has considered the circumstances under which it will exercise jurisdiction in disputes involving arbitration awards. While this action was pending, AFSCME brought an unfair labor practice charge with the ISLRB against plaintiffs, alleging that by failing to comply with the arbitration award, plaintiffs had committed an unfair labor practice. The board recognized that "[i]n certain circumstances, such as failure to comply with an award where no judicial review has been sought, *** a failure to comply with an arbitration award could constitute an unfair labor practice under the language of Section 10(a)(4) of the Act. [Ill. Rev. Stat. 1987, ch. 48, par. 1610(a)(4) ("It shall be an unfair labor practice for an employer or its agents to refuse to bargain collectively in good faith with a labor organization *** including, but not limited to, the discussing of grievances with the exclusive representative").]" (*Illinois Departments of Central Management Services, Revenue, Corrections & Mental Health*, 3 Pub. Employee Rep. (Ill.) par. 2033, No. S—CA—87—78 (ISLRB April 17, 1987).) The ISLRB dismissed the charge, however, finding that "a party's good faith pursuit of its statutorily granted right to judicial review is a defense to such an unfair labor practice." 3 Pub. Employee Rep. (Ill.) par. 2033, at VIII—214. Thus, the ISLRB itself recognized that while it has jurisdiction over an unfair labor practice, the circuit court rather than the board is the proper forum in which to seek vacation of such awards. In effect, the board deferred its jurisdiction to that of the judicial system, the opposite of what defendant urges here.

■ The plaintiffs here have not arbitrarily refused to comply with the award. Rather they have challenged the award in the courts as they are statutorily entitled to do. (Compare *Illinois Departments of Corrections & Central Management Services*, 4 Pub. Employee Rep. (Ill.) par. 2043, No. S—CA—88—70 (ISLRB Oct. 19, 1988) (where employer did not challenge a grievance settlement agreement in court, and the ISLRB found the employer's "complete and outright refusal" to honor the agreement to be a violation of the duty to bargain in good faith and thus an unfair labor practice).) Because we find that the circuit court had jurisdiction to consider plaintiffs' public policy challenge to the arbitration award, we need not and do not consider whether, had plaintiffs simply refused

to abide by the award and thereby committed an unfair labor practice, public policy would be a proper factor to be considered by the board in ruling on an unfair labor practice charge. See *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 491 N.E.2d 1259.

■ As to defendant's argument that, under the UAA, which provides that the only grounds for vacating arbitration awards are those which existed prior to the enactment of the Act, the only permissible grounds are fraud, misconduct or impartiality of the arbitrator, we disagree. Courts have long had the power to refuse to enforce contracts which violate public policy. (*City of De Kalb v. International Association of Fire Fighters, Local 1236* (1989), 182 Ill. App. 3d 367, 538 N.E.2d 867.) As the court said in *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 424, 386 N.E.2d 47, 52:

> "We recognize that any judicial decision to vacate an arbitrator's award compromises both the parties' interest in the finality of the arbitrator's decision and the underlying public policy in favor of resolving collective bargaining disputes by arbitration. Nevertheless, just as we will not enforce a private agreement which is repugnant to established norms of public policy, we may not ignore the same public policy concerns when they are undermined through the process of arbitration. Even if the arbitrator considered issues of public policy in construing the agreement before him, we may not abdicate to him our responsibility to protect the public interest at stake."

Accordingly we must reject defendant's argument that the circuit court here lacked jurisdiction to review the arbitrator's award.

■ We turn now to the issue of whether the arbitrator's award should be vacated as violative of public policy. We agree with the parties that this case is governed by *American Federation of State, County & Municipal Employees (AFSCME) v. State* (1988), 124 Ill. 2d 246, 529 N.E.2d 534, *aff'g* 158 Ill. App. 3d 584, 511 N.E.2d 749 (*Blasingame*). There the supreme court and this court considered the issue of judicial vacation of arbitration awards on public policy grounds. "An arbitration award in contravention of paramount considerations of public policy is not enforceable. (*Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union* (1979), 74 Ill. 2d 412, 423-24.) While there is no precise definition of public policy, it is to be found in the Constitution, in

statutes and, when these are silent, in judicial decisions." (*Blasingame*, 124 Ill. 2d at 260.) Each case must be judged by its own peculiar circumstances, applying a strict test. *Blasingame*, 158 Ill. App. 3d 584, 511 N.E.2d 749.

■ The supreme court in *Blasingame* looked to *W.R. Grace & Co. v. Local Union 759* (1983), 461 U.S. 757, 76 L. Ed. 2d 298, 103 S. Ct. 2177, for the proper standard to be applied in determining if public policy has been violated. "[T]he contract as *interpreted* by the arbitrator must violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " (Emphasis in original.) (*Blasingame*, 124 Ill. 2d at 261, quoting *W.R. Grace*, 461 U.S. at 766, 76 L. Ed. 2d at 307, 103 S. Ct. at 2183, quoting *Muschany v. United States* (1945), 324 U.S. 49, 66, 89 L. Ed. 744, 756, 65 S. Ct. 442, 451.) The violation of public policy must be clearly shown. *Blasingame*, 124 Ill. 2d at 261.

Plaintiffs argue that the public policy of ensuring the integrity of the correctional system requires the vacation of the arbitrator's award. The only case they cite to support this position is *Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 438 N.E.2d 147, in which the court affirmed the discharge by the Civil Service Commission of a program supervisor at a correctional center for statements made to an inmate concerning the murder of the prison warden, as an indication that the Illinois Supreme Court has recognized the sensitive and critical nature of employment within the Department of Corrections. There, however, the question before the court was whether the Commission had acted in an arbitrary or unreasonable manner in discharging Sutton, not whether an arbitrator's award violates the public policy of the State. Moreover, the misconduct in *Sutton* was directly related to the employee's job, as opposed to this case, where Burress' misconduct was collateral to his job responsibilities.

Further, plaintiffs contend, reinstatement of Burress would send a message to other parole officers that they need not obey the law in order to maintain their position, and that the two-month suspension which Burress received would not serve the public interest. Plaintiffs urge that there is an obvious distinction between hiring a rehabilitated former felon as the Department does, and retaining an employee who pleads guilty to committing a felony after he is employed.

Defendant counters that our focus should be on the arbitrator's award itself. (See Edwards, *Judicial Review of Labor Arbitration Awards: The Clash Between the Public Policy Exception & the Duty to Bargain*, 64 Chi.-Kent L. Rev. 3, 18 (1988) ("[T]he focus is properly directed to whether the arbitrator's award, as opposed to the underlying behavior which led to [the employee's] dismissal, violated some public policy").) Specifically, defendant argues that the question is whether reinstatement of Burress violates a clearly defined public policy.

Similar arguments were made in *Blasingame*. There, the Department of Mental Health argued that the reduction of discipline of two employees from discharge to suspension would violate the public policy against mistreatment of the mentally ill and mentally retarded, and would have a negative effect on employee discipline and on the public trust in the government's treatment of mental health recipients. (*Blasingame*, 158 Ill. App. 3d at 593.) AFSCME argued that the policy against reinstating employees found guilty of mistreatment of service recipients was not found in explicit laws and legal precedent, as required by *W.R. Grace*, but rather from general considerations of public policy, and therefore was not grounds for reversing the arbitrator's ruling. *Blasingame*, 124 Ill. 2d at 261-62.

In addressing these arguments, the court acknowledged the importance of the compassionate care of the mentally ill and mentally retarded, but nevertheless found that

"[t]he collective-bargaining agreement as interpreted by the arbitrator does not violate any explicit public policy that is well defined and dominant. There is simply no policy that mandates the discharge of all employees found guilty of mistreatment of a service recipient when the arbitrator expressly finds that the grievants were exemplary mental health employees, when punishment has been imposed, and where no nexis [*sic*] exists between the infraction and the patient's tragic death." *Blasingame*, 124 Ill. 2d at 262-63.

Here, there is no well-defined or dominant policy mandating discharge of this parole officer because of the felony which he committed. This conclusion is tacitly corroborated by the fact that, except for *Sutton*, which is inapplicable for the reasons already stated, plaintiffs have been unable to point to any authority attesting to a dominant public policy to the contrary. The arbitrator, in his ruling, specifically noted that other felons are employed as parole officers, and concluded that the fact Burress had committed a

felony was not conduct so inherently wrong as to disqualify him from his job. Furthermore, Burress' employment record was otherwise substantially unblemished. In addition, Burress was independently punished for his criminal act. In Federal court, he was placed on probation, and ordered to make restitution and perform a substantial number of hours of community service. When the arbitrator ordered reinstatement, he did it without back pay. Accordingly, we hold that the arbitrator's reduction of Burress' discipline from discharge to suspension and reinstatement without back pay does not contravene any well defined and dominant public policy of this State.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded with directions to the trial court to order enforcement of the arbitrator's award.

Reversed and remanded with directions.

MURRAY and McNULTY, JJ., concur.