(text box: 1) NO. 5-02-0363

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

AMERICAN FEDERATION OF STATE, )  Appeal from the 

COUNTY AND MUNICIPAL EMPLOYEES, )  Circuit Court of

COUNCIL 31, )  St. Clair County.

)

Plaintiff-Appellee, )

)

v. )  No. 02-MR-51 

)

MICHAEL S. SCHWARTZ, as Director of )

Central Management Services, and THE )

DEPARTMENT OF CENTRAL ) 

MANAGEMENT SERVICES, )  Honorable

)  Alexis D. Otis-Lewis,

Defendants-Appellants. )  Judge, presiding.

___________________________________________________________________________

JUSTICE DONOVAN delivered the opinion of the court:

I. FACTS

A. Procedural History

The American Federation of State, County and Municipal Employees, Council 31 (AFSCME), brought this action for an injunction in aid of arbitration against the State of Illinois Department of Central Management Services and its director, Michael S. Schwartz, in his official capacity (collectively referred to as CMS).  On March 5, 2002, AFSCME filed its original complaint for declaratory and injunctive relief, pursuant to Illinois's Uniform Arbitration Act (710 ILCS 5/1 
et seq
. (West 2002)) and sections 8 and 16 of the Illinois Public Labor Relations Act (5 ILCS 315/8, 16 (West 2002)).  AFSCME alleged that CMS's actions to implement a statewide one-day furlough program violated the terms of the parties' collective bargaining agreement (Agreement).  AFSCME asked that the one-day statewide furlough be enjoined pending a decision by an arbitrator on the grievance it had filed under the Agreement.  The complaint also asked that CMS be ordered to go to immediate arbitration on AFSCME's grievance.

In response, CMS filed a motion pursuant to the Uniform Arbitration Act and asked the circuit court to compel AFSCME to grieve and arbitrate its disputes involving alleged breaches of the Agreement.  CMS also asked the court to stay the injunction hearing.  CMS objected to the entry of an order compelling immediate arbitration.

The circuit court of St. Clair County entered a temporary restraining order (TRO) on March 8, 2002, restraining the implementation of the one-day furlough plan, but the court granted CMS's objection to AFSCME's request for an order compelling immediate arbitration.  CMS filed an interlocutory appeal from the TRO.  On March 19, 2002, this court affirmed the TRO.  
American Federation of State, County & Municipal Employees, Council 31 v.
 
Schwartz
, No. 5-02-0181 (March 19, 2002) (unpublished order pursuant to Supreme Court Rule 23(c) (166 Ill. 2d R. 23(c)).

Following the entry of the TRO, CMS amended its furlough plan to provide for permanent layoffs in seven State agencies and began to implement the amended plan.  In response, AFSCME amended its grievance to encompass the permanent layoffs.

On April 29, 2002, the circuit court denied CMS's motion to compel arbitration and stay the preliminary injunction hearing.  On the same date, the circuit court granted AFSCME leave to amend its complaint to add claims regarding the permanent layoffs.  The amended complaint sought to have the statewide one-day furlough and the permanent layoffs enjoined pending a decision by an arbitrator on the grievances AFSCME had filed under the Agreement.

A preliminary injunction hearing was held on May 3, 2002, and on May 15, the circuit court entered a preliminary injunction "enjoining the Defendants from implementing their plan to require all AFSCME bargaining unit employees statewide to be subject to a one[-]day temporary and/or indefinite layoff/furlough[,] pending a decision by the arbitrator."  On May 24, 2002, CMS brought this interlocutory appeal as of right to challenge the April 29, 2002, and May 15, 2002, orders.  We affirm.

B. Collective Bargaining Agreement

AFSCME and CMS are parties to a collective bargaining agreement for the period between July 1, 2000, and June 30, 2004, which contains a grievance procedure culminating in final and binding arbitration.  The Agreement contains a detailed layoff article that restricts CMS's authority to use temporary layoff provisions to implement a statewide furlough program.  Article 20 of the Agreement expressly provides as follows: "Temporary layoff provisions contained herein shall not be used for implementing a statewide furlough program which would affect all State agencies without the Employer first notifying and negotiating with the Union over such intent."  The same article also requires that layoffs, including temporary layoffs, "shall be by position classification" and "in inverse order of seniority."  Additionally, CMS is prevented from temporarily or permanently laying off any "certified or probationary employee within a position classification within an appropriate organizational unit *** until any temporary or emergency employee, within such position classification[,] is terminated noncertified."  The Agreement further limits CMS's authority to "employ, or cause to be employed through a firm or agency as a subterfuge to [the Agreement], individuals through the use of personal service contracts when the services performed under such contracts are within the scope of bargaining unit work."

A supplemental collective bargaining agreement prevents CMS from laying off bargaining-unit employees in the Department of Human Services "within a work location *** until all temporary, contractual, provisional, emergency employees, Illinois Work Experience Program Workers, Green Thumb Workers, Community Work Experience Program Workers, or other non[]profit workers in that work location have been laid off/terminated."  A second supplemental agreement precludes CMS from laying off bargaining-unit employees in the Department of Public Aid "within a work location *** until all temporary, contractual, provisional, emergency employees, Illinois Work Experience Program Workers, Summer Youth Program Workers, Unemployed Parent Work Employment Workers, Green Thumb Workers, Community Work Experience Program Workers, or other workers in that work location have been laid off/terminated."  The Agreement requires notifications to both AFSCME and employees targeted for a layoff and an opportunity for employees to exercise bumping and transfer rights in lieu of layoffs.

C. One-Day Furlough Program

On December 4, 2001, CMS notified AFSCME that it intended to implement a one-day furlough plan that would require approximately 44,000 AFSCME bargaining-unit employees statewide to take a day off without pay.  Between December 18, 2001, and February 7, 2002, the parties met for the purpose of negotiating a furlough program.  No agreement to implement a furlough program was reached during the course of those negotiations.  On February 7, 2002, CMS ceased negotiations and informed AFSCME that it had decided to use the temporary layoff provisions of the Agreement to implement a statewide furlough program.  On February 14, 2002, AFSCME filed a grievance protesting CMS's implementation of the plan as violating the Agreement's provisions as previously set forth.  AFSCME requested that the grievance be scheduled for immediate arbitration in order that an arbitrator's decision on the grievance could be rendered prior to March 15, 2002, the date on which the furloughs were scheduled to begin.  In its request, AFSCME emphasized "the immediacy of the situation, as well as the high degree of potential Employer liability."  CMS declined AFSCME's request to schedule the grievance for immediate arbitration.  (CMS objected to AFSCME's bypassing step 3, agency/department head, and step 4A, prearbitration meeting.)

D. Permanent Layoffs

The grievance alleged three types of contract violations with respect to permanent layoffs: (i) violations of the substantive rights of the employees subject to a layoff that determine who will eventually be laid off or transferred and who will exercise their seniority to remain employed, (ii) violations of the procedural rights of the employees and AFSCME with respect to matters such as the contractually specified notice intended to enable the employees to exercise their contract options when targeted for a layoff, and (iii) violations of AFSCME's rights to protect its dues-paying members against a layoff while non-bargaining-unit employees are being retained.  The alleged violations relate to numerous provisions in the Agreement as follows:

(i) Article 1, the recognition article; article 4, section 3, the fair share article; and the "Personal Services Contracts Memorandum" of understanding by the use of temporary employees and employees under personal service contracts to perform bargaining-unit work that should be performed by bargaining-unit employees.

(ii) Article 14, section 3, which has limits on the time during which work may be assigned to a temporary employee before a position must be filled with a permanent employee.

(iii) Article 20, the layoff article, which requires the following under section 2(e): "No certified or probationary employee within a position classification within an appropriate organizational unit shall be laid off until any temporary or emergency employee, within such position classification[,] is terminated noncertified."

(iv) Article 20, which contains a requirement for notices to both AFSCME and employees targeted for a layoff so that the employees can exercise their bumping and transfer options in lieu of a layoff under the contract.

(v) Article 20, which requires that layoffs be by seniority. 

(vi) Supplemental agreements with the Department of Human Services and the Department of Public Aid requiring that numerous categories of non-bargaining-unit employees be terminated prior to the layoff of bargaining-unit employees.

II. STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court, and a reviewing court will not disturb that decision absent a clear abuse of discretion.  
Desnick v. Department of Professional Regulation
, 171 Ill. 2d 510, 516, 665 N.E.2d 1346, 1351-52 (1996).  "Appellate review of the issuance of preliminary injunctions is restricted to determining whether the circuit court properly exercised its broad discretionary powers."  
Cannon v. Whitman Corp
., 212 Ill. App. 3d 79, 81-82, 569 N.E.2d 1114, 1116 (1991).  An abuse of discretion occurs when no reasonable person would take the position adopted by the lower court.  
McKenzie Dredging Co. v. Deneen River Co.
, 249 Ill. App. 3d 694, 700, 619 N.E.2d 188, 192-93 (1993).  The test is not whether the appellate court agrees with the trial court's decision,
 but whether the lower court " 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' "  
Zurich Insurance Co. v. Raymark Industries, Inc.
, 213 Ill. App. 3d 591, 594-95, 572 N.E.2d 1119, 1122 (1991) (quoting 
In re Marriage of Aud
, 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898 (1986)); see also 
In re J.S.
, 267 Ill. App. 3d 145, 147, 640 N.E.2d 1379, 1381 (1994); 
Kaden v. Pucinski
, 263 Ill. App. 3d 611, 615, 635 N.E.2d 468, 471 (1994).

With respect to the order denying CMS's motion to compel arbitration, the sole question is whether there was a sufficient showing to justify the order of the trial court denying the relief sought.  See 
Glenn H. Johnson Construction Co. v. Board of Education
, 245 Ill. App. 3d 18, 22, 614 N.E.2d 208, 211 (1993).

III. ANALYSIS

Federal labor law policy prohibiting injunctions in peaceful labor disputes over arbitral issues is set forth in the Norris-LaGuardia Act (29 U.S.C. §§101 through 115 (1982)).  To accomplish a similar purpose, Illinois adopted the Labor Dispute Act (820 ILCS 5/1 
et seq
. (West 2002)).  Notwithstanding the anti-injunction legislation, the United States Supreme Court has allowed federal courts to consider the propriety of an injunction where necessary to preserve the arbitral process.  
Boys Markets, Inc. v. Retail Clerks Union
, 398 U.S. 235, 26 L. Ed. 2d 199, 90 S. Ct. 1583 (1970).  In 
Boys Markets, Inc.
, the Supreme Court ruled that a strike over an arbitrable dispute could be enjoined pending a resolution of the dispute through arbitration.  398 U.S. at 254, 26 L. Ed. 2d 199, 90 S. Ct. at 1594. Courts have also recognized "reverse 
Boys Markets
 injunctions," or injunctions against employers to maintain the status quo in a labor dispute pending arbitration.  See 
Oil, Chemical & Atomic Workers International Union, AFL-CIO, Local 2-286 v. Amoco Oil Co.
, 885 F.2d 697 (10th Cir. 1989); 
Independent Oil & Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Co.
, 864 F.2d 927, 931 (1st Cir. 1988); 
Nursing Home & Hospital Union No. 434 v. Sky Vue Terrace, Inc.
, 759 F.2d 1094, 1098 (3d Cir. 1985); 
Local Lodge No. 1266 v. Panoramic Corp.
, 668 F.2d 276, 283 (7th Cir. 1981); 
Lever Brothers Co. v. International Chemical Workers Union, Local 217
, 554 F.2d 115, 122 (4th Cir. 1976).

This court has previously addressed this issue, in 
International Ass'n of Firefighters Local No. 23 v. City of East St. Louis
, 206 Ill. App. 3d 580, 565 N.E.2d 264 (1990).  In 
International Ass'n of Firefighters Local No. 23
, the union, which represented employees of the City of East St. Louis Fire Department, had obtained a temporary restraining order and a preliminary injunction prohibiting the city from laying off 30 firefighters.  We reversed the trial court, holding that because the union had failed to establish that its members would suffer irreparable harm in the absence of an injunction, the case did not fall within the exception to the application of anti-injunction statutes established in 
Aluminum Workers International Union v. Consolidated Aluminum Corp.
, 696 F.2d 437 (6th Cir. 1982).

W
e found it unnecessary to adopt 
Aluminum Workers International Union
 as the law in Illinois in 
International Ass'n of Firefighters Local No. 23
 because we found that, even if we were to do so, the union would not meet the requirements for the exception.  Here, however, there is a sufficient basis in the record for us to conclude that the trial court did not abuse its discretion in granting the preliminary injunction in aid of arbitration.  Accordingly, we now adopt the exception to the anti-injunction statute established in 
Aluminum Workers International Union
.

In 
Aluminum Workers International Union
, the United States Court of Appeals for the Sixth Circuit recognized an exception to section 4 of the Norris-LaGuardia Act (29 U.S.C. §104 (1970)).  As previously indicated, the Norris-LaGuardia Act broadly prohibits the issuance of injunctions in labor disputes.  This policy is rooted in a concern for "foster[ing] the growth and viability of labor organizations" (
Boys Markets, Inc.
, 398 U.S. at 252, 26 L. Ed. 2d 199, 90 S. Ct. at 1593), while at the same time encouraging parties to work out their differences without judicial involvement (
Oil, Chemical & Atomic Workers International Union
, 885 F.2d at 701).

The exception in 
Aluminum Workers International Union
, which is an extension of the "narrow exception" to the anti-injunction policy created by the United States Supreme Court in 
Boys Markets, Inc.
, permits an injunction against an employer when the injunction is necessary to maintain the status quo in order to protect the integrity of the arbitral process.  The court held that, in order for this exception to apply, the following must be established: (1) the underlying grievance is one that the parties are contractually bound to arbitrate and (2) one of the traditional bases for equitable injunctive relief exists: (a) the employer's breach of the collective bargaining agreement is of an ongoing nature, (b) the union will suffer irreparable harm from the employer's breach, or (c) the union will suffer more from the denial of the injunction than the employer will from its issuance.  
Aluminum Workers International Union
, 696 F.2d at 442.

The court found in 
Aluminum Workers International Union
 that the dispute was indeed arbitrable and that there appeared to be an ongoing breach of the agreement by the employer, but the court failed to find that the union would suffer irreparable harm from the breach.  The court held that irreparable harm is injury so great that an arbitrator's award, if forthcoming, would be inadequate to fully recompense the injured party, rendering the award an empty victory.  
Aluminum Workers International Union
, 696 F.2d at 443.  Such a result undermines the arbitral process and justifies the issuance of an injunction.  The court determined that the union had failed to establish this point when the only injury to the employees was the loss of employment from a solvent employer.  The court stated that, absent some indication of the employer's inability to reinstate affected employees or to pay them wages for the period of unemployment, the mere loss of employment is not irreparable harm and will not support a claim by the union for injunctive relief.  Thus, the court vacated the injunction, which had prohibited the employer from reorganizing job classifications, resulting in the elimination of 16 jobs.  
Aluminum Workers International Union
, 696 F.2d at 444; see also 
International Ass'n of Firefighters Local No. 23
, 206 Ill. App. 3d at 587, 565 N.E.2d at 268.

As in 
International Ass'n of Firefighters Local No. 23 
and 
Aluminum Workers International Union
, neither party disputes that the disagreement over the interpretation of the Agreement is subject to arbitration or that if AFSCME's position is correct, there would be an ongoing breach of the Agreement by CMS.  The issue is whether there was sufficient evidence of irreparable harm presented for this court to conclude that the trial court did not abuse its discretion in granting the preliminary injunction.

AFSCME presented evidence of five reasons in support of its contention that AFSCME does not have an adequate remedy at law if, in the absence of injunctive relief, it pursued the normal procedure of arbitrating after the fact and relied upon a make-whole arbitral remedy for the contract violations.  They are as follows: (1) the financial inability of the State to make good on an award, (2) the fact that, due to a combination of the multiplier effect on damages caused by the implementation of a defective layoff plan and the extra costs of operating the agencies with a shortage of employees (
e.g.
, overtime), the damages that will result from the implementation of the improper layoff plan will be enormous, (3) the logical conclusion that, since the State is conducting a layoff due solely to financial distress, it is not in a position to pay the laid-off employees for performing no services, (4) the unlikelihood, given the complexities of a layoff plan, that an arbitrator would direct the State to redo the layoff plan after the fact, and (5) the intent of CMS to obtain judicial relief vacating an arbitration award should the arbitrator assess the full contract damages rather than take into account the financial impact of a make-whole award on the State. 

We will focus our analysis only on AFSCME's position that if a favorable arbitration award is obtained in this case, it would afford no relief to improperly laid-off employees because, given the enormity of the damages and the impact upon the budget of the State, CMS would move to vacate the award as a violation of public policy.  AFSCME supported its argument by presenting evidence that CMS in late 2001 filed suit to vacate a $9 million arbitration award granting back pay to parole agents employed by the Department of Corrections.  CMS's argument focused on the arbitrator's obligation, 
as a matter of public policy
, to fashion a remedy that would not prevent a public agency from discharging its duties.  CMS's position was based on 
South Plainfield Board of Education v. South Plainfield Education Ass'n ex rel. English
, 320 N.J. Super. 281, 727 A.2d 71 (1999), and an extension of 
American Federation of State, County & Municipal Employees, AFL-CIO v. State of Illinois
, 124 Ill. 2d 246, 529 N.E.2d 534 (1988), and 
American Federation of State, County & Municipal Employees v. Department of Central Management Services
, 173 Ill. 2d 299, 671 N.E.2d 668 (1996).  The circuit court of Sangamon County vacated the $9 million award based on this theory advanced by CMS, and it remanded the case to the arbitrator.  No Illinois appellate court has addressed the issue of whether the financial impact of an arbitration award is a sufficient basis to vacate or modify an award as a matter of public policy, and we that find it is unnecessary to resolve this issue here.

CMS asserts that for at least the last 20 years, AFSCME has always grieved and arbitrated layoff disputes and that, prior to the circuit court's orders in this case, layoffs had never been stayed pending arbitration or for any other reason.  CMS also contends that AFSCME cannot show irreparable harm because make-whole relief is mandated by State statute (20 ILCS 415/1 
et seq.
 (West 2002)) and personnel rule (80 Ill. Adm. Code §302.597 (2000)) and that the State has never failed to comply with a final make-whole award, including those where an employee has been mistakenly laid off.

In response, AFSCME points to the testimony, given during the preliminary injunction hearing, of the individual who holds the position of chief labor relations counsel and manager of the office of labor relations for CMS:

"Q. My question to you is, did you ask the Court in this suit [the Sangamon County corrections case] to vacate the award because the arbitrator had not considered the fiscal impact of his decision on the employer?

A. Yes.

* * *

Q. What is to prevent you from going back before the same judge in this case, should there be an award, and say that notwithstanding the provision in the personnel code, you must take into consideration the financial impact upon the State of Illinois?

A. As far as what would stop us from making an argument, it would depend on how the arbitrator ruled.  If we felt that the arbitrator did not take into account the fiscal impact of his or her decision, then we would most likely make the same argument.

Q. Thank you.  That's a very honest answer and I appreciate it."

Accordingly, we find that in those atypical instances where the potential adverse arbitration award against the State is so enormous that it would cause the State to request that the court vacate or modify the terms of the award on the grounds that it would prevent a public agency from discharging its duties and thus arguably violate public policy, there is a sufficient showing to justify a finding of irreparable harm to the affected employees.

In addition, the loss to CMS is not greater than the potential loss to AFSCME.  A statewide one-day furlough and the permanent layoff of large numbers of employees are rare.  The expedited arbitration procedure by 
mutual agreement
 contained within the Agreement allows for the potential of a speedy resolution of all the disputes in this case.  If the CMS position regarding the Agreement is correct, it will be able to implement the widespread cost-saving measures within a relatively short period of time without the risk of incurring a huge arbitration award.  CMS acknowledges that it might very well ask that such an award be vacated or modified on public policy grounds.

A. The Plaintiff Has a Likelihood of Success on the Merits

In the context of an order restraining employer conduct in aid of arbitration, a plaintiff, in order to establish a likelihood of success on the merits, "need only establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor."  
Panoramic Corp.
, 668 F.2d at 284-85; 
Lever Brothers Co.
, 554 F.2d at 120; see also 
Nursing Home & Hospital Union No. 434
, 759 F.2d at 1098 n.3.  The union is not required to establish that it will necessarily succeed on the merits of its grievance before the arbitrator, as holding the union to such a strict standard of proof "would intrude significantly on the arbitrator's function[] and result in [a] type of judicial preemption of the arbitral process."  
Nursing Home & Hospital Union No. 434
, 759 F.2d at 1098 n.3; see also 
Panoramic Corp.
, 668 F.2d at 284.  Thus, if there is "a genuine dispute with respect to an arbitrable issue" and if the union's position "is not frivolous," then the union has established that there is a likelihood of success on the merits for purposes of the issuance of an injunction.  
Panoramic Corp.
, 668 F.2d at 285; see also 
Oil, Chemical & Atomic Workers International Union
, 885 F.2d at 703-04.  We find that AFSCME has made an adequate showing of the likelihood of success on the merits for purposes of an injunction in aid of arbitration.

B. This Action is Not Barred by the Doctrine of Sovereign Immunity

CMS, relying on 
Foley v. American Federation of State, County & Municipal Employees, Council 31, Local No. 2258
, 199 Ill. App. 3d 6, 556 N.E.2d 581 (1990), asserts that this action is barred by the doctrine of sovereign immunity.  CMS's reliance on 
Foley
 is misplaced.  
In 
Foley
, the appellate court held that a claim for a breach of contract by an individual employee against the State was barred by the doctrine of sovereign immunity.  
Foley
, 199 Ill. App. 3d at 12-14, 556 N.E.2d at 585-86.  No provision of the Illinois Public Labor Relations Act permits actions in the circuit court for a breach of contract to be brought by individual employees.  Section 301 of the Labor Management Relations Act provides, "Suits for violation of contracts between an employer and a labor organization *** may be brought in any district court ***."  29 U.S.C. §185(a) (1994).  Section 301 "contemplates suits by and against individual employees as well as between unions and employers."  
Hines v. Anchor Motor Freight, Inc.
, 424 U.S. 554, 562, 47 L. Ed. 2d 231, 96 S. Ct. 1048, 1055 (1976).  Section 16 of the Illinois Public Labor Relations Act, however, provides, "[S]uits for violation of agreements *** between a public employer and a labor organization *** may be brought by the parties to such agreement in the circuit court ***."  5 ILCS 315/16 (West 2002).  Section 16 thus authorizes suits only by the parties to a collective bargaining agreement, 
i.e.
, the employer and the union, not individual employees.  
Stahulak v. City of Chicago
, 184 Ill. 2d 176, 180, 703 N.E.2d 44, 46 (1998).

This action is authorized by section 8 of the Illinois Public Labor Relations Act, which states that the grievance and arbitration provisions of any collective bargaining agreement are subject to the Uniform Arbitration Act (5 ILCS 315/8 (West 2002)), and by section 16 of the Illinois Public Labor Relations Act, which authorizes suits by parties to a collective bargaining agreement (5 ILCS 315/16 (West 2002)).  Morever, section 25 of the Illinois Public Relations Act expressly provides, "For purposes of this Act, the State of Illinois waives sovereign immunity."  5 ILCS 315/25 (West 2002).

C. The Trial Court Properly Denied CMS's Motion to Compel Arbitration

CMS asserts that because it filed a motion called "motion to compel arbitration," the trial court was required, pursuant to section 2(d) of the Uniform Arbitration Act (710 ILCS 5/2(d) (West 2002)), to stay the proceedings in the trial court.  CMS's reliance on section 2(d) is misplaced because AFSCME never refused to arbitrate.  Indeed, both prior to and after filing this action, AFSCME requested that CMS proceed to immediate arbitration.  CMS refused such requests.  See 
Aluminum Workers International Union
, 696 F.2d at 446.

D. The Illinois Public Labor Relations Act Did Not Divest the Circuit Court of 

Jurisdiction Over AFSCME's Complaint

CMS asserts that the Illinois Public Labor Relations Act
 gives the Illinois Labor Relations Board exclusive jurisdiction over all public-sector collective bargaining matters in Illinois and limits the jurisdiction of the trial court to issue an injunction in aid of arbitration.

CMS relies on 
Board of Education of Community School District No. 1, Coles County v. Compton
, 123 Ill. 2d 216, 526 N.E.2d 149 (1988), in support of its contention that circuit courts do not have subject matter jurisdiction to issue injunctions in aid of arbitration.  In 
Compton
 the court held that the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1701
 et seq.
 (now 115 ILCS 5/1 
et seq.
 (West 2002))) divests the circuit courts of jurisdiction to vacate or enforce arbitration awards in the context of public education labor disputes.  
Compton
, 123 Ill. 2d at 221, 526 N.E.2d at 152.  The 
decision was based, in part, on the fact that the Illinois Educational Labor Relations Act, unlike the Illinois Public Labor Relations Act, does not make any reference to the Uniform Arbitration Act.  
Compton
, 123 Ill. 2d at 222, 526 N.E.2d at 152.

Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers
, 128 Ill. 2d 155, 538 N.E.2d 524 (1989), raised the question of whether circuit courts retain the power to enjoin arbitration.  The court answered the question in the negative.  
Board of Education of Warren Township High School District 121
, 128 Ill. 2d at 157, 538 N.E.2d at 525.  The court again differentiated the Illinois Public Labor Relations Act's express adoption of the Uniform Arbitration Act, thus granting the circuit courts the authority to compel or stay arbitration and vacate arbitration awards in cases involving public noneducational employers.  
Board of Education of Warren Township High School District 121
, 128 Ill. 2d at 164-65, 538 N.E.2d at 528-29.  Specifically, the court stated:

"Similarly, the Illinois Public Labor Relations Act, unlike the Act here in question, explicitly provides that '[t]he grievance and arbitration provisions of any collective bargaining agreement shall be subject to the Illinois "Uniform Arbitration Act" [Ill. Rev. Stat. 1987, ch. 10, par. 101
 et seq.
].'  (Ill. Rev. Stat. 1987, ch. 48, par. 1608.)  Under the Uniform Arbitration Act, the question of whether a dispute clearly falls within the scope of an arbitration agreement is to be resolved by the circuit courts (
Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr
 (1988), 124 Ill. 2d 435, 449[, 530 N.E.2d 439, 445]), and the circuit courts are explicitly granted the power to compel or stay arbitrations."  
Board of Education of Warren Township High School District 121
, 128 Ill. 2d at 164, 538 N.E.2d at 528.

Section 8 of the Illinois Public Labor Relations Act provides that the grievance and arbitration provisions of any collective bargaining agreements shall be subject to Illinois's Uniform Arbitration Act.  Under the Uniform Arbitration Act, all proceedings to compel arbitration, to stay arbitration, to seek the vacation of an arbitration award, or to enforce an award are through the circuit court.  
Department of Central Management Services v. American Federation of State, County & Municipal Employees
, 222 Ill. App. 3d 678, 682, 584 N.E.2d 317, 319 (1991).  Accordingly, the circuit court had jurisdiction over AFSCME's petition in this instance.

IV. CONCLUSION

In summary, AFSCME, seeking an injunction in aid of arbitration, was not required to exhaust the very arbitral process it was seeking to protect prior to filing suit.  AFSCME is not seeking a court determination of whether CMS substantially breached the Agreement.  AFSCME is seeking an injunction in aid of arbitration so that an effective arbitral remedy will be preserved while the arbitration procedure is exhausted.  Without an injunction, AFSCME would be unlikely to win a full make-whole remedy if it ultimately were to prevail on the merits of its grievance at arbitration.  Accordingly, the circuit court did have jurisdiction to consider AFSCME's petition and did not err in issuing a preliminary injunction restraining CMS's layoff plan pending a decision by an arbitrator.

For the aforementioned reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

HOPKINS, P.J., and KUEHN, J., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/26/03. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.