EVEREN SECURITIES, INC., Plaintiff-Appellee, v. A.G. EDWARDS AND SONS, INC., *et al.*, Defendants-Appellants.

Third District   No. 3—98—0874

Opinion filed October 5, 1999.

Nicholas P. Iavarone (argued) and Marc S. Leventhal, both of Bellows & Bellows, of Chicago, for appellants.

Christopher J. Barber, Nancy L. Hendrickson (argued), and Kenneth L. Schmetterer (argued), all of Rudnick & Wolfe, of Chicago, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Everen Securities, Inc. (Everen), filed suit against defendants A.G. Edwards & Sons, Inc. (A.G. Edwards), Sidney Carlson and Loren Wright, alleging damages for breach of contract and misappropriation of trade secrets when Carlson and Wright resigned from Everen and began employment with A.G. Edwards. Everen's claims were subsequently arbitrated. The defendants appeal from the trial court's decision to confirm the arbitration award of $1,131,000 plus fees in favor of Everen. We hold that: (1) the arbitration panel did not exceed its authority in considering the issue of trade secret; (2) the evidence does not show that a member of the panel was prejudiced against A.G. Edwards; and (3) the panel did not commit gross errors of law or fact in awarding damages. Accordingly, we find no grounds for vacating the arbitrators' award.

Carlson and Wright worked for Everen in its Galesburg office. Carlson was a senior vice-president for Everen and the Galesburg office manager. At early stages in their employment, both Carlson and Wright signed a training agreement through which they agreed not to solicit Everen customers for 30 days after leaving Everen employment. Sometime in 1996, Carlson and Wright decided to resign from Everen and work for A.G. Edwards. In November of 1996, Carlson and Wright made photocopies of documents containing customer account information. The defendants planned to use the information to create a database from which A.G. Edwards could generate letters notifying Carlson's and Wright's customers of their change in employment. While still employed by Everen, Carlson extended offers of employment on behalf of A.G. Edwards to Everen employees. On December 3, 1996, Carlson, Wright and two other office employees resigned and began working for A.G. Edwards. Upon their resignation, the defendants immediately began soliciting the business of their former Everen customers. That same day, an Everen officer searched the Galesburg office and recovered only 100 of Everen's 2,800 client files.

On December 4, 1996, Everen filed a complaint in state court alleging (1) breach of fiduciary duty by Carlson and Wright; (2) breach of contract by Carlson and Wright; (3) aiding and abetting breach of fiduciary duty by A.G. Edwards; (4) conspiracy by all three defendants; (5) misappropriation of trade secrets by the three defendants; and (6) unfair competition. The complaint requested compensatory damages and injunctive relief relating to the solicitation of customers and the alleged misappropriation of trade secrets.

A hearing for a temporary restraining order (TRO) was held on December 5, 1996, through which Everen sought to bar Carlson and Wright from soliciting Everen customers for 30 days in accordance with the training agreement. Carlson and Wright, however, had entered into the agreement with a predecessor of Everen (Blunt, Ellis & Loewi). Because the agreement made no mention of the rights of successors and assignees of the original company, the court denied the TRO as to customer solicitation. Through the TRO, Everen also sought the return of the customer information documents which Everen argued was a "trade secret." Although the court found that the information did not amount to a trade secret, the court partially granted the TRO, ordering the defendants to return all customer account information taken by Carlson and Wright until or unless the defendants received written authorization from the customers allowing the defendants to retain such information.

Preliminary injunction hearings were held. Because Carlson had not returned the customer account information, Everen renewed the arguments and requests for relief it made at the TRO hearing. Several witnesses testified. In particular, Carlson testified that upon receiving the complaint in this case he burned most of the 26 boxes of documents containing the customer account information that he copied.

With regard to the customer solicitation issue, the court found that the training agreement was valid and enforceable but refused to enjoin the defendants since the 30-day period had already passed. The court again held that the customer account information was not a trade secret, finding that the information had no real economic value standing alone and that Everen had not manifested a clear intent to keep such information secret. The court then renewed the conditions of the TRO requiring Carlson to return the customer information files.

Since the case involved registered securities brokers, the court ordered that all other claims and counterclaims be submitted for binding arbitration before the New York Stock Exchange (NYSE) pursuant to section 2 of the Uniform Arbitration Act (710 ILCS 5/2 (West 1996)). The trial court specifically reserved the issue of damages as a result of the defendants' breach of the nonsolicitation agreement for the arbitration panel. The court stated that the order was entered without prejudice to the merits or claims that have been or may be asserted or to any counterclaims that may be raised in arbitration.

Everen renewed its state court complaint for purposes of the arbitration and the defendants counterclaimed, alleging malicious prosecution, abuse of process, slander and intentional infliction of emotional distress. During the hearings, Everen presented the expert

testimony of Michael Graham on the issue of damages. Graham opined that Everen incurred $1.23 million in damages by the defendants' conduct. The defendants presented no damages testimony. Everen also argued that the customer account information taken by the defendants was a trade secret. The arbitration panel allowed such argument over the defendants' objection.

At the close of evidence, the arbitration panel entered a unanimous decision: (1) dismissing all claims against Wright; (2) directing A.G. Edwards and Carlson to pay Everen $1,131,000 and forum fees in the amount of $33,000; and (3) dismissing the defendants' counterclaims. The arbitration panel made no specific findings of fact or conclusions of law on the face of its award.

The defendants moved to vacate the award, and Everen moved to confirm the arbitration award in the circuit court. The court granted Everen's motion to confirm and denied the defendants' motion to vacate. In particular, the court found that the arbitration panel's award was within its discretion and supported by the record of the preliminary injunction hearings despite the fact that the award lacked specific findings. Other pertinent facts will be presented as they become relevant to the analysis.

On appeal, the defendants claim that the trial court erred in denying their motion to vacate the arbitration award and granting Everen's motion to confirm the award.

■ It is well settled that judicial review of an arbitrator's award is extremely limited (*American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 671 N.E.2d 668 (1996)), in fact, more limited than appellate review of a trial court's decision. *Cook County v. American Federation of State, County & Municipal Employees, District Counsel 31, Local 3315*, 294 Ill. App. 3d 985, 691 N.E.2d 777 (1998). Because the parties have agreed to have their disputes settled by an arbitrator, it is the arbitrator's view that the parties have agreed to accept, and the court will not overrule an award simply because its interpretation differs from that of the arbitrator. *Heatherly v. Rodman & Renshaw, Inc.*, 287 Ill. App. 3d 372, 678 N.E.2d 59 (1997). To do otherwise would substitute the judgment of the court for that of the decision-maker chosen by the parties and would make an award the commencement, not the end, of litigation. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 574 N.E.2d 636 (1991). Thus, a court must construe an award so as to uphold its validity whenever possible. *Cerajewski v. Kunkle*, 285 Ill. App. 3d 222, 674 N.E.2d 57 (1996).

■ Section 12 of the Uniform Arbitration Act (Act) (710 ILCS 5/12 (West 1998)) expressly authorizes five grounds for judicial vacation of

an arbitration award, including if the arbitrators exceeded their powers or if there was evident partiality on the part of one of the arbitrators. In addition to these statutory bases, a court may vacate an award when it is in contravention of paramount considerations of public policy (*Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 222 Ill. App. 3d 678, 584 N.E.2d 317 (1991)), or when a gross error of law or fact appears on the face of the award (*Thomas v. Leyva*, 276 Ill. App. 3d 652, 659 N.E.2d 24 (1995); *Rauh v. Rockford Products Corp.*, 143 Ill. 2d at 393, 574 N.E.2d at 644).

The defendants' main contention is that the NYSE arbitration panel exceeded the scope of its authority by reopening and taking evidence on the trade secret issue. Because the trial court had previously determined that Everen's client names and addresses were not trade secrets, they claim that the panel's decision to revisit the issue warrants reversal of the award. We disagree.

■ Arbitrators exceed their authority when they decide matters that were not submitted to them. *Perkins Restaurants Operating Co. v. Van Den Bergh Foods Co.*, 276 Ill. App. 3d 305, 657 N.E.2d 1085 (1995). Matters decided in a preliminary injunction are not conclusive. A preliminary injunction does not decide controverted facts or the merits of a claim; it only shows that sufficient cause has been shown for the court to preserve the rights in issue until a final hearing on the merits. *People ex rel. Hartigan v. National Anti-Drug Coalition*, 124 Ill. App. 3d 269, 464 N.E.2d 690 (1984). A court's findings made as a result of a preliminary injunction request are not final and do not bind the parties at subsequent stages of the case. *Electronic Design & Manufacturing, Inc. v. Konopka*, 272 Ill. App. 3d 410, 649 N.E.2d 619 (1995).

■ The court's order partially granting Everen's motion for preliminary injunction specifically stated that it was "entered without prejudice to the merits or to the claims or defenses which have been or may be asserted or to any counterclaims which may hereafter be asserted in arbitration." Consequently, the trade secret count was resubmitted to the arbitration panel in Everen's statement of claim in arbitration. Since the issue was previously ruled upon as part of a preliminary injunction motion, the circuit court's holding was not binding upon the arbitration panel's subsequent consideration of the matter. See *Electronic Design & Manufacturing, Inc.*, 272 Ill. App. 3d at 415, 649 N.E.2d at 623 (findings on preliminary injunction motion do not carry with them preclusive effect of *res judicata*).

The defendants maintain that the arbitration award should be reversed because the award violates public policy concerns. We cannot agree.

■ Courts may refuse to enforce arbitration awards that contravene well-defined public policy ascertained by reference to laws and legal precedents and not from general considerations of supposed public interest. *General Casualty Co. v. Tracer Industries, Inc.*, 285 Ill. App. 3d 418, 674 N.E.2d 473 (1996).

■ On this issue, the defendants have sought to draw a distinction between urban and rural securities firms, arguing that if we do not overturn the arbitration award we will be doing an injustice to rural firms. The defendants contend that Everen succeeded in arbitration simply because four of the five employees of Everen's Galesburg office left to take positions with A.G. Edwards. The defendants refer to this as a "raid" theory of recovery. If four employees left Everen's Chicago office, so argues the defendants, Everen would not have succeeded on a "raid" theory. But the defendants have made no reference to laws or legal precedents endorsing the existence of such public policy concerns. Accordingly, we will not overturn the award on the basis that it undermines policy interests.

Furthermore, the "raid" theory was not alleged as a separate and distinct count in Everen's complaint. Thus, we decline the defendants' invitation to define and set forth the elements of a "raid" theory cause of action.

The defendants also argue that the trial court erred in denying their motion to reverse the arbitration award because the panel committed more than one gross error of law in awarding damages. The defendants maintain that the arbitration panel's award is the result of multiple errors of law because: (1) it is based on a finding that Carlson breached his fiduciary duty to Everen; and (2) the actual amount of damages awarded was not supported by the evidence presented to the arbitrators.

■ Initially, we acknowledge that an arbitration award generally will only be overturned for gross errors of law or fact if those errors appear on the face of the award. But because the panel in the instant case failed to provide any rationale for its award in the award document, we are compelled to review the arbitration hearing transcripts provided in the record to determine the propriety of the award. See generally *Peregrine Financial Group, Inc. v. Martinez*, 305 Ill. App. 3d 571 (1999).

Turning to the defendants' fiduciary duty argument, they maintain that under Illinois law only corporate officers and directors have a fiduciary duty that prohibits them from competing against their employer while still under its employment. Here, the defendants argue that Carlson was not an officer of Everen; thus, he could not be found liable for breach of fiduciary duty.

■ Corporate officers owe a fiduciary duty of loyalty to their corporate employer not to actively exploit their positions within the corporation for their own personal benefit or hinder the ability of a corporation to continue the business for which it was developed. *Dowd & Dowd, Ltd. v. Gleason*, 284 Ill. App. 3d 915, 672 N.E.2d 854 (1996). But former general employees may compete with their former employers absent a contractual restrictive covenant, provided there was no demonstrable business activity before termination of employment. *Dowell v. Bitner*, 273 Ill. App. 3d 681, 652 N.E.2d 1372 (1995).

■ Here, the evidence as to whether Carlson was a vice-president of A.G. Edwards is conflicting. Although he was adorned with the title of senior vice-president, Carlson claims that the title was given to him because he was branch manager and did not confer upon him corporate officer status. The evidence shows, however, that Carlson was a branch office manager with significant managerial and supervisory responsibilities for the operation of the Galesburg office. Accordingly, the inference that he was a corporate officer owing certain fiduciary duties to Everen not to hinder the business was not in error. See *H&H Press, Inc. v. Axelrod*, 265 Ill. App. 3d 670, 638 N.E.2d 333 (1994) (assuming managerial operations and duties was sufficient evidence to find "vice-president" was officer of corporation).

Alternatively, even if Carlson's claims are accurate, his efforts of creating a customer database for A.G. Edwards, extending offers of employment to Everen employees for A.G. Edwards, and actively soliciting customers from Everen to A.G. Edwards all while still under Everen's employment demonstrate significant business activities prior to his resignation. Therefore, any finding that Carlson breached his fiduciary duty was not a gross error of law or fact. See *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d 817, 413 N.E.2d 1299 (1980) (employees breached fiduciary duty by activity promoting interests of rival business and diverting personnel and customers to employer's competitor).

The defendants claim that the arbitrators committed a gross error of law in determining the amount of compensatory damages to be awarded by relying on the testimony of Everen's opinion witness.

■ The trial court's decision affirming an arbitration panel's award of damages will not be reversed absent an abuse of discretion. *Morales v. Mongolis*, 293 Ill. App. 3d 660, 688 N.E.2d 1196 (1997). Judicial review of the arbitrators' award is more limited than appellate review of a trial court's award. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 574 N.E.2d 636 (1991). If an award is within the submission of the arbitration record and contains the honest decision of the panel after a full and fair hearing on the matter, it will not be set aside. *Rauh*, 143 Ill. 2d at 394-95, 574 N.E.2d at 644-45.

•11 Determining the extent of compensable losses in a case of this nature is difficult. To aid the arbitration panel, Everen presented an opinion witness, Michael Graham, who was educated and experienced in the valuation of securities and marketing businesses. Graham estimated that Everen lost $1,230,000 in profits due to Carlson's and Wright's departure—a departure orchestrated by Carlson while still under Everen's employment. The compensable damage figure for this breach of loyalty was based on a detailed accounting technique that Graham explained to the arbitration panel. The projection assumed a reasonable growth rate and calculated the lost profits for three years after the defendants resigned as follows: $242,000 for 1997; $238,000 for 1998; and $234,000 for 1999. The technique added a terminable year calculation for the years 2000 and beyond of $519,000.

The defendants maintain that the damage award was a gross error, in part, because it presumed Carlson and Wright would have remained with Everen forever. Graham testified that he calculated the terminable year figure by applying a conservative present rate of discount to future monetary losses (35%) and assigning a low probability percentage to any future revenues, arriving at approximately $500,000 in lost profits for the years 2000 and beyond. This figure does not project Everen's lost profits to infinity.

The defendants also contend that the damage award should have been based only on lost profits for the 30 days during which Carlson and Wright were allegedly bound by the noncompetition agreement. From a careful reading of the arbitration hearings it appears that the panel considered the 30-day noncompetition contract unenforceable. This is supported not only by the parties arguments before the panel but also by its decision to assess damages only against Carlson and A.G. Edwards, sparing Wright.

Instead, it seems the arbitrators based the compensatory award on a finding that Carlson breached his fiduciary duty of loyalty to Everen. He breached that duty by soliciting customers away from Everen while still under its employment, copying confidential Everen client files without authorization and then burning those files after he was notified of pending litigation against him. His actions left Everen's Galesburg office without the majority of its client files and void of any reasonable ability to quickly recreate the confidential client information and regain its client base. As such it was not error for the panel to consider Graham's entire calculation of lost profit over the next five or six years in determining an appropriate award of damages.

The defendants offer no compelling reason why this court should substitute its judgment for that of the panel that fully heard and considered the matter. The defendants did not contradict Graham's

testimony with their own opinion witness on the issue of damages or provide the arbitration panel with an alternative method for calculating damage. Moreover, the trial court confirmed the award based solely on the cursory evidence it had previously considered in the preliminary injunction hearings. Therefore, we cannot say that the arbitrators committed any gross errors of law by choosing to follow Graham's testimony in awarding compensatory damages.

We have carefully considered the defendants' remaining contentions and find further discussion unnecessary.

For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

LYTTON and KOEHLER, JJ., concur.