SLOAN ELECTRIC, Plaintiff-Appellee, v. PROFESSIONAL REALTY AND DEVELOPMENT CORPORATION, Defendant-Appellant.

Third District    No. 3—03—0563

Opinion filed November 8, 2004.

O'MALLEY, P.J., specially concurring.

Scott R. Halloin, of Mallery & Zimmerman, S.C., of Milwaukee, Wisconsin, for appellant.

Sheryl H. Kuzma, of Myers, Berry, O'Conor & Kuzma, Ltd., of Ottawa, and Robert Metts, of Geneva, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Professional Realty & Development Corporation (PRDC), appeals the trial court's order confirming an arbitration award in favor of plaintiff, Sloan Electric (Sloan). PRDC argues that the trial court erred in confirming the award, because the arbitrator failed to dispose of all of the issues presented and made gross mistakes of fact and law. We affirm in part, reverse in part, and remand the cause.

On July 28, 2000, PRDC, a general contractor, subcontracted with Sloan to perform "design build" electrical work at Stonecroft Village, a senior housing project. The project consisted of a 32-unit structure and a 24-unit structure. In exchange for labor, services, and materials, Sloan was to be paid $221,238. A contract dispute subsequently arose. According to PRDC, Sloan failed to provide an electrical system design plan and "cut sheets" showing every device that would be used in the system. On October 13, 2000, PRDC made a written demand for these documents. Sloan provided a preliminary design plan on December 5, 2000, but in PRDC's opinion, the document was unprofessional, incomplete, and unacceptable. On January 5, 2001, and January 19, 2001, PRDC sent Sloan letters stating that PRDC had not yet received a complete design plan and cut sheets. Sloan submitted some cut sheets and small plans of individual units on January 26, 2001. Four days later, PRDC sent Sloan a letter listing issues that needed to be addressed "[i]n order to complete the *** plan review." Sloan submitted another preliminary plan and more cut sheets on February 14, 2001. PRDC later informed Sloan that the fixtures that Sloan was proposing to install were not of adequate quality.

On March 5, 2001, PRDC sent Sloan a letter entitled "Additional Written Notice to Subcontractor" (additional notice), stating that PRDC intended to terminate Sloan due to Sloan's failure to supply a complete design plan and cut sheets of all products. The additional notice stated that it was served pursuant to section 7.2.1 of the contract, which states that, if the subcontractor repeatedly fails to perform according to the contract and also:

*"fails within seven days* after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor *may, after seven days following receipt by the Subcontractor of an additional written notice* and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient."
(Emphasis added.)

In such an event, the contractor would be entitled to damages from the subcontractor if the completion costs exceeded the unpaid balance of the contract. The same day that PRDC served the additional notice, it hired an electrical inspector to examine Sloan's electrical work because it had "suspicions" that Sloan had made errors.

On March 6, 2001, Sloan delivered additional cut sheets to PRDC's attorney and part owner, Timothy Munson. Sloan's attorney, Wayne Whitmore, also attempted, without success, to arrange a meeting with PRDC to discuss the situation. On March 9, 2001, PRDC's inspector orally reported that the site appeared to have significant violations of the National Electric Code. By March 12, 2001, seven days after PRDC had served the additional notice, Sloan had not provided a design plan that PRDC found satisfactory. That day, PRDC served Sloan a notice of termination and had the police escort Sloan's employees off the construction site. PRDC hired another electrical subcontractor the following day. According to Sloan, PRDC refused to allow Sloan to return to the jobsite to retrieve its equipment.

On March 13, 2001, PRDC received the inspector's written report, identifying numerous code violations. According to PRDC, the majority of the violations were in areas that had already been covered by drywall, and it took a total of 1,161 hours of labor, over a period of five months, to correct the errors. PRDC claims that it suffered $258,195 in damages as a result of the violations.

PRDC did not bring the alleged code violations to Sloan's attention before Sloan's termination. According to Sloan, it never had the opportunity to examine, fix, or challenge the purported violations. PRDC told Sloan that it had videotaped the defective work, but Munson later stated that the videotape was accidentally destroyed. PRDC subsequently provided 11 photographs allegedly showing defects in Sloan's work.

PRDC had provided the standard form contract that the parties signed, and it contained mediation and arbitration clauses. PRDC served Sloan an arbitration demand, claiming that Sloan breached the contract. According to PRDC, Sloan refused to arbitrate, so PRDC filed an action in federal court for breach of contract. In turn, after

PRDC refused Sloan's demand for a final payment of $68,146.02, Sloan filed claims to foreclose on a mechanic's lien and for breach of contract. Eventually, PRDC and Sloan agreed to arbitrate "all disputes."

In arbitration, the parties filed cross-motions for summary judgment. PRDC argued that it properly terminated Sloan for cause, that Sloan breached the contract and caused $258,195 in damages, and that Sloan's mechanic's lien was defective. PRDC's breach of contract claim requested relief under section 7.2.1, and PRDC also claimed that Sloan breached its warranties under sections 4.1.2 and 4.5.1. Section 4.1.2 of the contract required Sloan to submit drawings, samples, and other submissions with "reasonable promptness," so as not to delay the project. Under section 4.5.1, Sloan warranted that its work would be "free from defects." This section further stated, "This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents."

Sloan argued in its motion for summary judgment that PRDC terminated Sloan for the alleged code violations without first notifying Sloan of the problems or giving Sloan the opportunity to cure. Sloan further argued that PRDC's termination notices were defective, resulting in a termination for convenience under the contract rather than a termination for cause. Sloan contended that it was therefore entitled to damages under the contract's termination-for-convenience clause, section 7.3. Under section 7.3, Sloan would be entitled to an adjustment for "increases in Subcontract Time and Subcontract sum, including profit on the increased cost of performance, caused by suspension, delay or interruption." Adjustments were not allowed if the performance was suspended "by another cause for which the Subcontractor is responsible" or if "an equitable adjustment is made or denied under another provision of this Subcontract." Sloan claimed that, because the contract was improperly terminated, Sloan was not responsible for PRDC's completion costs. Sloan also argued that PRDC was barred from claiming that Sloan's work was defective, because PRDC had not allowed Sloan to view the deficiencies and had destroyed relevant evidence. In addition to damages under section 7.3, Sloan sought recovery under the Mechanics Lien Act (Act) (770 ILCS 60/0.01 et seq. (West 2000)) because the Act allows the award of attorney fees and costs (770 ILCS 60/17 (West 2000)).

A few days before the scheduled arbitration hearing, the arbitrator, a former judge, contacted the parties and said that an opportunity had arisen for him to return to the bench. He cancelled the scheduled proceedings, stating that he thought that he could decide the case based on the summary judgment motions. The arbitrator subsequently

618

notified the parties that he was ready to rule based on the evidence presented, but that he would consider any additional evidence submitted by the parties by November 11, 2002. In response, PRDC submitted additional documents.

The arbitrator issued a 10-page decision, concluding that a termination for convenience occurred. As the arbitrator's considerations and reasoning are central to the disputes in this case, we quote extensively from the decision. The arbitrator began by stating that the parties had presented him with cross-motions for summary judgment. He recited facts for the first five pages of the decision, and he included copies of PRDC's March termination notices. Among these facts, the arbitrator stated that, after PRDC terminated Sloan:

> "Sloan's then [A]ttorney Whitmore called Attorney Munson after the [*sic*] Sloan's removal from the project site, it appears on the same March 12th, 2001, and in sum the conversation between the two was to the effect that Attorney Whitmore suggested that there was no need for [A]ttorney Munson to use the police to remove Sloan. *Attorney Munson said it was done for the convenience of PRDC to get new electricians on the job immediately to start correcting hundreds of thousands of dollars worth of damages.* It appears a videotape of the damage alleged to have been caused by Sloan was made by Attorney Munson, but later was lost and never shared with Sloan. Shortly thereafter Attorney Whitmore for Sloan requested of Munson the authority to enter the site to recover Sloan equipment, and was refused. *The depositions of Attorney Munson and Attorney Whitmore make it obvious that any further consideration of Sloan's work was not to be.*" (Emphasis added.)

The arbitrator mentioned that PRDC hired an inspector to review Sloan's work, and that soon after Sloan's termination, PRDC hired another subcontractor. He then stated:

> "Both PRDC and Sloan have submitted evidence of the claimed damages of each. Some estimates were exaggerated and some demands were unreasonable given the circumstances, in this arbitrator's opinion."

The arbitrator subsequently stated that PRDC's additional notice was actually the first proper termination notice and that PRDC did not provide a second notice as required by section 7.2.1. The arbitrator then stated:

> "More importantly, however, are the following activities of PRDC. It is worth repetition to remind the reader that PRDC planned to terminate Sloan prior to March 5th, 2001, and only on March 5th delivered the first 7-day termination notice to Sloan; that on March 6th, Attorney Munson, as PRDC's local agent and a partial owner accepted Sloan's attempted corrective offerings but neglected to

forward them onto [sic] PRDC's home office until March 9th, 2001, a Friday. On the same day an electrical expert firm, Lang, was engaged to commence the inspection of Sloan's work by Mr. Chiasky.

*** [I]t is obvious from [Mr. Chiasky's] deposition that no consideration was to be given to Sloan to complete the project at that time.

Importantly, during this early time frame, neither Sloan nor it's [sic] attorney Whitmore receive a response from PRDC to meet and to consider exactly what further corrective action needed to be taken to satisfy PRDC, and Sloan received no response from it's [sic] submission of new cut sheets and the fixture index Sloan delivered to PRDC on March 6th, 2001. Additionally *** Sloan was refused to be allowed to remove Sloan property left on the construction site. *Additionally, the depositions of Attorneys Whitmore and Munson clearly support finding that the termination of Sloan satisfied PRDC's desire to replace Sloan immediately.*

Further *there is no need to 'read between the lines'* for this arbitrator to find that PRDC, unhappy with Sloan as the electrical contractor on it's [sic] several million dollar project, would settle for nothing short of a termination of Sloan. PRDC then proceeded to thereafter refuse to allow Sloan to 'commence and continue correction' (7.2.1) after March 5th, 2001, thereby violating the spirit and intent and purpose of the first 7-day termination notice provision.

***

However, under all the circumstances here presented an equitable rendering of damages to Sloan is rather difficult. *The evidence is that Sloan's work was not satisfactory.* The evidence is that PRDC did not want Sloan back on the job site. The evidence is that PRDC experts were engaged on March 5th not to suggest corrective action of the National Electric Code violations or otherwise by Sloan, but instead supplied findings to the successor electrical subcontractor ***. The evidence is that Sloan was going to be and was terminated for unsatisfactory work and for the convenience of PRDC. *Accordingly the Motion for Summary Judgment of PRDC is denied.*" (Emphasis added.)

Next, the arbitrator listed the damages that Sloan had presented in its motions, which included line items for recording and filing the mechanic's lien claim. He stated that, under section 7.3, no adjustment was to be made to the extent that the subcontractor was responsible. The arbitrator then granted Sloan summary judgment "in part" and awarded Sloan $68,643.66 in damages. This total did not include costs relating to the mechanic's lien claim, Sloan's

anticipated profit, or interest, but it did include $20,000 in attorney fees.

PRDC moved to "reconsider, modify, correct or clarify" the award, and the arbitrator denied the motion. Sloan moved to confirm the award in the trial court. PRDC again moved to vacate, modify, or correct the award. The trial court denied PRDC's motion and confirmed the award. PRDC timely appealed.

On appeal, PRDC argues that the trial court erred in confirming the award, because the arbitrator: made gross mistakes of fact and law regarding the breach of contract claim; failed to address PRDC's breach of warranty claim, the "waiver of the notice provision," and Sloan's mechanic's lien claim; and made a gross error of law by awarding damages without an evidentiary hearing. We review the trial court's ruling *de novo*, as only the trial court's legal conclusions are at issue. *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 179 (2000).

The purpose of arbitration is to resolve a dispute in less time and with less expense than litigating in court. *Edward Electric Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 96 (1992). Parties who agree to arbitration have chosen the means to resolve their dispute, and judicial modification of an arbitrator's decision deprives the parties of that choice. *Hawrelak*, 316 Ill. App. 3d at 179. As such, an appellate court's review of an arbitrator's award is much more limited than review of a trial court's decision, and, whenever possible, a court must construe an award so as to uphold its validity. *Hawrelak*, 316 Ill. App. 3d at 178-79. A court has no power to determine the merits of the award simply because it strongly disagrees with the arbitrator's contract interpretation. *Canteen Corp. v. Former Foods, Inc.*, 238 Ill. App. 3d 167, 179 (1992). Also, a court cannot overturn an award on the ground that it is illogical or inconsistent. *Perkins Restaurants Operating Co., L.P. v. Van Den Bergh Foods Co.*, 276 Ill. App. 3d 305, 309 (1995). In fact, an arbitrator's award will not be set aside even for errors in judgment or mistakes of law or fact. *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 181 Ill. 2d 373, 381 (1998). As our supreme court stated, a " 'contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation.' " *Garver v. Ferguson*, 76 Ill. 2d 1, 9 (1979), quoting *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99 (1854); see also *Hawrelak*, 316 Ill. App. 3d at 181 ("Once parties bargain to submit their disputes to the arbitration system (a system essentially structured without due process, rules of procedure, rules of evidence, or any appellate procedure), we are disinclined to save them from themselves").

The limited circumstances under which we may modify or vacate an arbitration award are set forth in the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/1 *et seq.* (West 2002)). Section 13(a) of the Arbitration Act (710 ILCS 5/13(a) (West 2002)) allows a court to modify or correct an award where: there was an evident miscalculation or an error in a description; the arbitrator ruled on a matter not submitted to him, and the court is able to correct the award without affecting the merits of the decision upon the issues submitted; or the award is imperfect in form. Under section 12(a) of the Arbitration Act (710 ILCS 5/12(a) (West 2002)), a court can vacate an award in the following circumstances: the award was obtained by corruption or fraud; the arbitrator was partial, exceeded his powers, or unreasonably refused to postpone the hearing or to hear material evidence; or there was no arbitration agreement.

▉ While a court cannot vacate an award due to errors in judgment or mistakes of fact or law, a court can vacate an arbitration award where a *gross* error of law or fact appears on the award's face, or where the award fails to dispose of all matters properly submitted to the arbitrator. *Edward Electric Co.*, 229 Ill. App. 3d at 97-98; see *7-Eleven, Inc. v. Dar*, 325 Ill. App. 3d 399, 409 (2001) (if an award is broader or narrower than the submission, the entire award is void because the arbitrator has exceeded his powers). To vacate an award based on a gross error of law, a reviewing court must be able to conclude, from the award's face, that the arbitrator was so mistaken as to the law that, if apprised of the mistake, he would have ruled differently. *Lee B. Stern & Co. v. Zimmerman*, 277 Ill. App. 3d 423, 428 (1995); see *Board of Education of the City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 477 (1981) (arbitrator's application of old version of statute would constitute gross mistake of law). The party moving to vacate the award must present clear, strong, and convincing evidence that the award was improper. *Hawrelak*, 316 Ill. App. 3d at 179.

In this case, the arbitrator made his decision based on the parties' cross-motions for summary judgment. Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002). If the parties file cross-motions for summary judgment, they agree that no material issues of fact exist and that only legal questions are involved. *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31, 36 (2002). However, despite the existence of cross-motions for summary judgment, the court should

not rule in favor of either party if a genuine issue of fact precludes summary judgment. *State Farm Insurance Co.*, 332 Ill. App. 3d at 36.

We first address PRDC's claim that the arbitrator made gross mistakes of fact relating to the breach of contract claim. PRDC disputes the following statements: (1) "Attorney Munson said [the police escort] was done for the convenience of PRDC to get new electricians on the job immediately to start to correct hundreds of thousands of dollars worth of damages"; (2) "[t]he depositions of Attorney Munson and Attorney Whitmore make it obvious that any further consideration of Sloan's work was not to be"; and (3) "the depositions of Attorneys Whitmore and Munson clearly support the finding that the termination of Sloan satisfied PRDC's desire to replace Sloan immediately."

Concerning the first alleged mistake of fact, PRDC contends that Munson never made such a declaration. PRDC further contends that the arbitrator mistakenly stated that the attorneys' conversation about the termination took place on March 12, 2001, the day PRDC terminated Sloan; PRDC maintains that the conversation actually occurred after March 23, 2001. PRDC asserts that the arbitrator used this mistaken information to "read between the lines" and infer that PRDC terminated Sloan for code violations, a ground not stated in the termination notice, and thus did not properly terminate Sloan for cause.

As mentioned, we are able to vacate an award due to a gross factual error only if the error is apparent on the award's face. *Edward Electric Co.*, 229 Ill. App. 3d at 97. Limiting our review to the award's face, the disputed statement is not erroneous. See *American Invsco Realty, Inc. v. Century 21, Rohter & Co.*, 96 Ill. App. 3d 56, 59 n.2 (1981) (in determining whether an award contains a gross mistake of fact, court may not examine record on which the arbitrator relied). We also note that, as the award's language reveals, the statement itself was, at most, only a secondary consideration in the determination that PRDC terminated Sloan for convenience. Furthermore, the exact date of the conversation is not material. PRDC admits that it hired the inspector before terminating Sloan because it had "suspicions" about Sloan's work, and PRDC received an oral report from the inspector about apparent code violations several days before Sloan's termination. The parties do not dispute that PRDC did not receive the inspector's written report until after the termination. Contrary to PRDC's assertion that the arbitrator used the incorrect date to "read between the lines," the arbitrator specifically stated that there was "no need to 'read between the lines'" in determining that PRDC wanted to terminate Sloan.

PRDC argues that the second and third statements are gross errors of fact because, in the excerpts of Munson's testimony submitted to the arbitrator, Munson discusses only the loss of videotape evidence and does not mention Sloan's work or the termination. However, as stated, in determining whether an award contains gross factual errors, we may not examine the evidence submitted to the arbitrator. *American Invsco Realty, Inc.*, 96 Ill. App. 3d at 59 n.2. The award's face does not reveal that the disputed statements are erroneous.

PRDC further claims that the arbitrator incorrectly "inferred" that Sloan attempted to cure its default by delivering additional cut sheets and a fixture list to Munson, and that PRDC did not give Sloan an opportunity to cure its default. PRDC maintains that Sloan did not successfully cure its default because it never submitted a complete design plan. We decline to explore this issue because an improper inference would not qualify as a gross mistake of law or fact appearing on the award's face, nor constitute any other ground upon which we may vacate an arbitration award.

Next, PRDC argues that the arbitrator made a gross mistake of law in determining that a termination for convenience occurred, because, at a minimum, he should have held an evidentiary hearing to resolve the issue. We note that the parties filed cross-motions for summary judgment, thereby agreeing that all issues could be determined as a matter of law. See *State Farm Insurance Co.*, 332 Ill. App. 3d at 36. Still, a genuine issue of material fact would warrant further proceedings. *State Farm Insurance Co.*, 332 Ill. App. 3d at 36. Here, in arriving at his decision, the arbitrator relied primarily on the relevant contract clauses, the notices sent to Sloan, and the undisputed facts. Based on these sources, the arbitrator could have determined, as a matter of law, that PRDC terminated Sloan for convenience. See *Garver*, 76 Ill. 2d at 9, quoting M. Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vand. L. Rev. 685, 706 (1957) (court must determine " 'whether the construction of the contract made by the arbitrator is a reasonably possible one that can seriously be made in the context in which the contract was made' "). We conclude that the arbitrator did not make a gross error of law in resolving this issue without an evidentiary hearing.

We next address PRDC's argument that the arbitrator failed to decide PRDC's breach of warranty claim. There is a presumption that the arbitrator considered all claims, and the award need not show how each item of the parties' respective demands was resolved. *Edward Electric Co.*, 229 Ill. App. 3d at 100; see *Cohen v. Meyers*, 115 Ill. App. 2d 286, 293 (1969) (arbitrator's lack of reference to defendants' arguments does not mean that arbitrator failed to consider them). Arbitra-

tors "need not provide explanations or rationale to show how their conclusions were reached. An arbitrator need only announce his result." *Braun/Skiba, Ltd. v. Orchard Partnership*, 177 Ill. App. 3d 331, 335 (1988). Here, the arbitrator clearly stated that PRDC "claims a breach of the construction lien design/build" contract, and he expressly denied PRDC's summary judgment motion. Although the arbitrator did not directly address the breach of warranty claim, we must presume that he considered and rejected this claim.

PRDC argues that, even if the arbitrator denied summary judgment on its breach of warranty claim, there should have been an evidentiary hearing on the claim. PRDC contends that the issue was not fully resolved because Sloan did not move for summary judgment on the issue. We disagree. The parties filed cross-motions for summary judgment, and the arbitrator could have considered and rejected PRDC's breach of warranty claim as a matter of law. As stated, the arbitrator was not required to discuss his reasoning. Even if, *arguendo*, the arbitrator made a gross legal error in resolving PRDC's breach of warranty claim, we cannot vacate the award on this basis because the error does not appear on the award's face.

Next, PRDC argues that the arbitrator failed to address the issue of "waiver of the notice provision." PRDC contends that, even if its termination process was defective because it did not give Sloan a second, seven-day notice, Sloan was not harmed by the defect. PRDC maintains that, according to a relevant treatise, the second notice period is for the benefit of the general contractor and is not intended to provide the subcontractor with an additional seven days to cure its default. PRDC further maintains that Sloan could not have cured its default even if it had been given an additional seven days, because it took the second subcontractor five months to repair the code defects. As to the final assertion, we note that PRDC has repeatedly maintained that it terminated Sloan for failing to supply an appropriate design plan and all relevant cut sheets, rather than for failing to correct substandard electrical work. In any event, we conclude that PRDC's argument is without merit. The issue of "waiver of the notice provision" is essentially an argument in support of PRDC's breach of contract and breach of warranty claims. The arbitrator denied summary judgment for PRDC on these claims, and he was not required to mention how he resolved particular arguments, including this one, in arriving at his conclusion. See *Cohen*, 115 Ill. App. 2d at 293.

We now turn to PRDC's argument that the arbitrator failed to address Sloan's mechanic's lien claim. PRDC points out that the award does not expressly state that the arbitrator resolved the lien claim in Sloan's favor. However, as discussed, we must presume that the

arbitrator resolved all claims. The mechanic's lien issue was clearly before the arbitrator, as both parties definitively moved for summary judgment on this issue. In the award, the arbitrator expressly cited Sloan's evidence of damages relating to the lien claim, including line items for the costs of recording the mechanic's lien and filing the mechanic's lien suit. He also awarded Sloan attorney fees, which were prohibited by the contract but allowed under the Mechanics Lien Act (770 ILCS 60/17 (West 2000)). The arbitrator stated that Sloan's summary judgment motion was "granted in part," and he awarded Sloan a portion of the damages requested. As such, PRDC has not provided clear evidence to overcome the presumption and actual indications that the arbitrator ruled on the mechanic's lien claim.

Finally, PRDC argues that the arbitrator made a gross error of law by determining the damages on Sloan's breach of contract and mechanic's lien claims without holding an evidentiary hearing. We agree. The arbitrator stated that both parties' evidence of damages contained some "exaggerated" estimates and "unreasonable" demands. As such, there was clearly a disputed factual issue regarding the amount of damages suffered by the parties. Furthermore, the arbitrator ruled that under the contract's termination-for-convenience provision, section 7.3, Sloan was not entitled to an equitable adjustment to the extent that Sloan was responsible. Because "Sloan's work was not satisfactory," the arbitrator awarded Sloan only a portion of the damages requested. However, the degree to which Sloan's work may have been unsatisfactory was also a disputed issue of fact that would affect the damage award. Accordingly, we hold that the arbitrator made a gross error of law by awarding Sloan damages in summary judgment. An evidentiary hearing is required to determine the amount of damages to which Sloan is entitled.

Sloan argues that an evidentiary hearing is unnecessary because PRDC willingly submitted the dispute to the arbitrator to resolve on the basis of the summary judgment motions. Sloan points out that, after the arbitrator informed the parties that he was ready to rule but would examine any additional evidence submitted, PRDC supplemented the summary judgment record but never suggested that the case could not be resolved through summary judgment. Sloan's argument is not persuasive. As discussed, even if the parties file cross-motions for summary judgment, judgment should not be entered in either party's favor if a genuine issue of material fact exists. *State Farm Insurance Co.*, 332 Ill. App. 3d at 36. Here, there were significant disputed issues of fact relating to damages, and the arbitrator's failure to hold an evidentiary hearing on the matter constituted a gross error of law. Accordingly, the trial court erred in fully confirming the arbitration award.

An arbitration award is severable and sustainable in part if portions of the award are not in any manner dependent on one another. *Edward Electric Co.*, 229 Ill. App. 3d at 105. Such is the situation here, as the damages award may be vacated without affecting the remainder of the arbitrator's decision. Therefore, we affirm the judgment of the circuit court of La Salle County in all respects, except as it pertains to damages. We vacate the damages awarded to Sloan, and we reverse and remand the cause for further proceedings, consistent with this opinion, on the issue of the amount of damages to which Sloan is entitled.

Affirmed in part and reversed in part; cause remanded.

KAPALA, J., concurs.

PRESIDING JUSTICE O'MALLEY, specially concurring:

I agree with all aspects of our opinion in this case, but write separately to point out the existence of a competing line of cases that muddies the analytical field. Both lines of cases state that a reviewing court will not vacate an arbitration award unless, among other things, "a gross error of law or fact appears on the face of the award." *Edward Electric Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 97 (1992). Unfortunately, the lines are divided in their application of the "gross error" standard.

Our opinion in this case sufficiently illustrates a strict application of the "gross error" standard. In addition, one of the cases cited above, *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 181 (2000), is illuminating in its discussion of the "gross error" standard. It states, relevantly:

"Once parties bargain to submit their disputes to the arbitration system (a system essentially structured without due process, rules of procedure, rules of evidence, or any appellate procedure), we are disinclined to save them from themselves. For instance, Hawrelak's claim that the arbitrators erred by refusing to exclude nontestifying witnesses from the hearing room is wholly without merit. While this might be a serious issue in trial court proceedings, it is not an issue in arbitration proceedings. Absent *any* evidence that this award was made in bad faith, that any of the arbitrators were guilty of fraud or corruption, or that the arbitrators deliberately chose not to follow the law, the trial court's vacatur of the arbitration award cannot stand.

In so concluding, we reaffirm what we wrote in *Tim Huey*, 272 Ill. App. 3d 100, 649 N.E.2d 1358, in which we affirmed the trial court's confirmation of an arbitration award:

'We see no principled way to inject ourselves into this case, to correct an award of damages we suspect is insufficient, where the parties have exercised their right to select an alternate forum. That is not to say that we are satisfied with the arbitrators' award in this case. If a jury had made this award, we might well reverse it. *** We should not concoct some reason to review arbitration awards we do not like, however, at the same time stating that we will not set aside an award because of errors in judgment or mistakes of law or fact.' *Tim Huey*, 272 Ill. App. 3d at 108-09, 649 N.E.2d at 1364." (Emphasis in original.) *Hawrelak*, 316 Ill. App. 3d at 181.

*Hawrelak* and *Tim Huey* both demonstrate that, when strictly applied, the "gross error" standard provides for a very limited review on the part of the appellate court.

On the other hand, a number of cases oxymoronically delve into the record in order to determine whether the arbitrator made a gross error on the face of the award. For example, in *Everen Securities, Inc. v. A.G. Edwards & Sons, Inc.*, 308 Ill. App. 3d 268, 275 (1999), the court noted that "because the [arbitration] panel in the instant case failed to provide any rationale for its award in the award document, we are compelled to review the arbitration hearing transcripts provided in the record to determine the propriety of the award." The *Everen* court then proceeded to search the record far beyond the face of the arbitration award.

In addition, *Ryan v. Kontrick*, 304 Ill. App. 3d 852, 859 (1999), contains the following interesting discussion:

"We next address Kontrick's claim that the arbitrator's award of attorney fees must be vacated because it lacked supporting evidence.

This issue is not reviewable. *** A mistake of law or fact will not serve as a basis to vacate an award, unless the error is gross and apparent on the face of the award. [Citations.]

Kontrick has waived review of this issue where he did not object to the lack of supporting evidence before the arbitrator but argued only that the award was improper because both parties were 'at fault.' [Citations.] Moreover, the award of attorney fees does not constitute a gross error that was apparent on the face of the award."

This passage indicates that the court reviewed the record to determine what the appellant had argued before the arbitration panel, even though it also invoked the "gross error" standard of review. This searching review of the record is wholly at odds with the stated manner of review.

In my view, the method employed to review the arbitration award

in this case satisfies both the logic and the purposes behind arbitration. If a reviewing court is to carefully sift the record of an arbitration case, then no longer will the parties receive the nonjudicial dispute resolution for which they bargained. Instead, the review of an arbitration case will proceed exactly like the review of any case from the circuit court and provide an expensive and judicial resolution to the dispute. Thus, the line of cases including *Tim Huey*, *Hawrelak*, and this one provide a significantly better reasoned and logical application of the "gross error" standard.